WAECHTER, Respondent, v. ST. LOUIS & MERA-
MEC RIVER RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, June 1, 1905.

1. PLEADING: Separate Statement of Causes: Referring to Previous Count. Where matter of inducement is stated in the first count of a petition, it may be incorporated in a subsequent count by mere reference.

2. ———: ———: Negligence and Willfulness. In an action for damages on account of personal injuries caused to the plaintiff by the defendant, where the first count of the petition sets out the circumstances under which the injury was incurred, and alleges that it was caused by the negligence of the defendant, specifying the acts of negligence, a second count, which alleges that the injury was caused by the willful act of the defendant, but incorporates the facts stated in the first count, except the specifications of negligence, by mere reference, is a sufficient statement of a cause of action.

3. ———: ———: ———. Proof of negligence necessarily disproves willfulness and vice versa, so that they cannot be joined in the same count; but they may be properly alleged in separate counts in order to meet any proper evidence which might show the manner in which the injury was caused.

4. ———: ———: ———: Election of Causes. Where plaintiff, in an action for personal injuries, alleges in one count that his injuries were caused by the negligence of the defendant and in another count that such injuries were caused by the willful mis-

conduct if the defendant, he can not be compelled to elect upon which count he should proceed to trial, but is entitled to have the different theories embodied in the two counts submitted to the jury.

5. **STREET RAILWAYS: Contributory Negligence: Jury Question.** In an action against a street railway company for personal injuries, where the evidence showed that the plaintiff, with a crowd of passengers, was endeavoring to board a car between two parallel tracks, when he was caught between the car he was attempting to board and a car of the defendant approaching on the other track, and received the injuries for which he sued, and where he could not see the approaching car on account of the crowd in front of him, the question as to whether he was guilty of contributory negligence, in remaining in the position of danger, or failing to discover the approaching car in time to get out of the way, was for the jury.

6. **PERSONAL INJURIES: Excessive Verdict.** Where pain of body and mental anguish, resulting from an injury, are elements which enter into the estimate of damages sought to be recovered, the question of amount is one which must be deferred to the jury and the trial court; a verdict of the jury in such a case will not be disturbed on account of being excessive, unless so excessive as to shock the moral sense, or else it clearly appears that the jury was influenced by passion or prejudice.

Appeal from St. Louis City Circuit Court.—*Hon. O'Neill Ryan*, Judge.

AFFIRMED.

*Jefferson Chandler* and *J. Lionberger Davis* for appellant.

(1) The petition in this case contains but one count; that which is entitled the second count in said petition is not, under the rules of pleading in this State, a separate count by itself, and therefore, whatever its signification, it must be considered a part of the so-called first count. Each count must be complete in itself, and must stand as an independent statement of the

cause of action, and must contain all the allegations necessary to the statement of the cause of action. Weber v. Squire, 51 Mo. App. 603; Bank v. Lexington, 74 Mo. 104; Russell v. Railway, 83 Mo. 505. (2) If the paper called a petition in this case be adjudged to be a unit, and constitute but one count, then it is repugnant in its allegation and self-destructive. If the paper called a petition be adjudged to be composed of two counts, then the whole petition falls under the condemnation of inconsistency. The substantiative allegations thereof are irreconcilable. Bindbeautal v. Railway, 43 Mo. App. 470; Raming v. Railway, 157 Mo. 477, 508, 57 S. W. 268. (3) Different counts must be consistent with each other. The office of pleadings is to produce issues of fact or law, and as the proof in all cases must correspond with the allegations made, it would lead to the most absurd results if the plaintiff in support of one count of his petition were permitted to adduce evidence, the tendency of which is to contradict his averments in another count. Pat. Mo. Code Pl., sec. 237. (4) The court erred in not granting a nonsuit, which was asked by the defendant in the nature of a demurrer to plaintiff's evidence and pleadings. Judge v. Elkins, 66 N. E. 708; Davies v. Railway, 159 Mo. 1, 59 S. W. 892.

*Richard F. Ralph, Thos. T. Fauntleroy* and *Shepard Barclay* for respondent.

(1) The motion to elect had no merits as an original proposition, even had it been timely. A party plaintiff may plead his facts "alternatively," as our Code declares (sec. 626). He may set forth separately in his petition various states of facts in order to avoid variance. Each count must be consistent with itself, that is all that the principles of pleading require of a plaintiff. Maguire v. Transit Co., 103 Mo. App. 459, 78 S. W. 838; Brownwell v. Railroad, 47 Mo. 239; Owens v. Railroad, 58 Mo. 386; Zellars v. Light Co., 92 Mo. App. 115;

Rinard Case, 164 Mo. 270, 64 S. W. 124. (2) Negligence to be actionable consists in a failure to use due care; whether that failure is intentional or inadvertent it is none the less negligence. There is no inconsistency in charges of different sorts of breach of duty, one accidental, the other intentional. Roddy v. Railroad, 104 Mo. 244, 15 S. W. 1112. (3) There is nothing whatever in appellant's contention that plaintiff was negligent. He was engaged in a lawful act (trying to enter the Lee avenue car) in a lawful place, with a number of other passengers, who prevented his view of the car till it was right upon him. He was taken by surprise, and his acts were such as warranted the jury in finding that he exercised ordinary care. Frank v. Transit Co., 99 Mo. App. 323, 73 S. W. 239; Murray v. Transit Co., 83 S. W. Rep. 995; Jennings v. Railroad, 112 Mo. 276, 20 S. W. 490; Scullin v. Wabash Co., 83 S. W. Rep. 760.

### STATEMENT.

On the evening of January 3, 1903, the plaintiff, who was then about twenty years of age and in the employ of the St. Louis Car Company, after finishing his day's work, boarded a Broadway car and rode to Locust street, where he was transferred to a Lee avenue car to be carried to his home in the northern part of the city. He left the Broadway car at the intersection of Broadway and Locust street and boarded a Lee avenue car, which was standing on the south track on Locust street between Broadway and Sixth street. The car he boarded was out of order, and the passengers were advised by the conductor to take another Lee avenue car, standing about three feet ahead on the same track. About twenty-five or thirty of the passengers, including the plaintiff, got off the car at the front platform, passed north between the two standing cars and made a rush to get on the forward car by way of the rear platform. Plaintiff

and Fred Astroth were in the rear of a bunch of passengers and before they could get aboard, a St. Louis & Meramec River car, traveling west on the north track, came along and caught plaintiff and Astroth between it and the standing car and rolled the plaintiff, turning him around and around six or eight times and dropping him on the street. One of plaintiff's ribs was fractured, his collar bone dislocated and his arms and back bruised. The injury caused him much pain and suffering and the loss of eleven weeks' time. There is also evidence that the dislocation of plaintiff's collar bone interferes with the lifting power of his right arm and that he will not recover of this injury under four or five years.

The Meramec river car runs north on Fourth street to Locust where it turns west and runs over Locust street on the north track. Plaintiff testified that he knew these cars ran west on the north track in Locust street and when he got off the Lee avenue car and passed between it and the one ahead, he looked east to see if a car was coming on the north track but did not see one, and that after he got on that part of the street between the two tracks, the bunch of passengers in front of him obstructed his view and he could not see the car coming from the east on the north track and that he did not see the car that rolled him until it was right on him (within a foot or two of him) and too late to get out of its way. In his deposition taken before the trial and read in evidence by the defendant, plaintiff stated that he did not see the car until it struck him. The evidence is all one way that the gong was not sounded and no warning whatever was given of the approach of the Meramec car, and all of plaintiff's witnesses testified that the car was running at a rapid rate of speed. One of plaintiff's witnesses, who got off the disabled car at the rear platform, testified that he saw the Meramec river car stop on the west side of Broadway, saw the motorman turn on the power to start the car, and apprehending danger, stepped over the track out of reach of the car, and saw the

Waechter v. Railroad.

bunch of passengers getting on the Lee avenue car, saw the motorman turn on more power as his car approached and hallooed at him three times to stop but that he paid no attention and went ahead at a rapid speed. The plaintiff testified that he knew he was in a place of danger when between the two tracks but that he could not have seen the approaching car, on account of the bunch of people immediately in front of him, without stepping back on to the north track. All the passengers except plaintiff and Astroth got on the Lee avenue car before the arrival of the Meramec river car, and Astroth testified he had hold of the hand rail and was trying to pull himself up on the car step when he was struck and rolled between the two cars.

A statement made by the motorman was read as his evidence by the defendant. The motorman stated that his car was running from two to two and one-half miles per hour when it passed the Lee avenue car and that there was no one on or so near the north track as to be struck by his car, and that he did not know anyone had been hurt by it until informed by his conductor, that as his car approached from the east it was in plain view of any one looking east from where the Lee avenue car stood. The conductor testified that the car was running about two miles an hour and that he did not know any one had been hurt by it until he had turned his car in that evening.

The petition is in two counts: the first charges negligence on the part of the conductor in failing to discover plaintiff's perilous position and stop the car to avoid injuring him; the second charges that the motorman "intentionally, recklessly and with wanton disregard of plaintiff's rights" ran the car upon him.

The answer was a general denial and the affirmative defense of contributory negligence.

The jury found for plaintiff on the first count and assessed his damages at $2,250. The verdict was for defendant on the second count.

At the close of plaintiff's evidence the defendant moved the court for a compulsory nonsuit, and at the close of plaintiff's evidence and again at the close of all the evidence the defendant moved the court to compel the plaintiff to elect upon which count he would proceed. These motions were all denied.

BLAND, P. J. (after stating the facts):—1. The matter stated as inducement in the first count of the petition covers over a page and one-half of the printed abstract (ordinary size). The second count begins as follows:

"For the purpose of stating a second cause of action plaintiff hereby repeats all the facts above recited (except the specifications of negligence and of the damages thereby sustained by said minor) and prays that the said facts be taken as part of this second cause of action to avoid unnecessary prolixity in this petition."

Then follow the allegations of intentional injury. For the reason the matter of inducement is not set out in full in the second count, the defendant contends the petition contains but one count. Its position is, that a cause of action cannot be stated by reference to or by adoption of allegations in another cause of action. Section 593 of the Code provides that different causes of action joined in the same petition "must be separately stated, with the relief sought for each cause of action, in such manner that they may be intelligibly distinguished."

In Bricker v. Railway, 83 Mo. 391, it is said: "When a pleader includes in his statement or petition several distinct causes of action, it is unnecessary for him to repeat allegations which are applicable to them all." The statement in the case alleged the killing of plaintiff's stock by defendant's locomotive and engine, on three different dates, and contained but one allegation that the stock, at the three different dates, got upon

defendant's road where it was required by law to fence its right of way but had neglected to do so. The court held that it was unnecessary to repeat in every count the allegation of failure to fence as it was common to them all.

In St. Louis Gas Light Co. v. St. Louis, 86 Mo. 1. c. 498, it is said:

"The petition consists of various counts, two for each month—one for the price of the gas, and one for the other services. The first count sets out the incorporation of the three parties to the contract, the ordinance directing the contract to be made, the contract and the terms thereof. These matters are not stated in the second and subsequent counts, but in them reference is made to the first by the use of such terms as 'in the district aforesaid,' 'under said contract,' and 'agreed as aforesaid.' "

It was held that subsequent counts might be made certain by reference to preceding ones.

The rule always has been, that where matter of inducement is stated in the first count (if this count be good) a mere reference to it in subsequent counts is sufficient. [Loomis v. Swick, 3 Wend. 205.] The contention that the counts are a unit, stating two repugnant causes of action, we do not think is supported by either reason or authority. The petition contains two causes of action, separately stated in such manner as to be intelligibly distinguished. It is true, the same act causing the injury is set forth in both counts of the petition. The difference in the counts is not in the act but in its quality. In the first its quality is described as negligence, and in the second count as willfulness. Proof of negligence necessarily disproves willfulness and vice versa, and for this reason they could not be joined in the same count. The cause of action was the injury, and the two counts stated it in different ways to meet the evidence, which might show that it occurred in the manner alleged in the first or the manner alleged in the sec-

ond count. That the same cause of action may be stated in this way, in different counts, as the various theories or phases of the case may alternate, is clearly permissible and is common practice. [R. S. 1899, sec. 629; Brownell v. Railroad, 47 Mo. 239; Owens v. Railroad, 58 Mo. 386.]

2. We do not think the court erred in refusing to compel the plaintiff to elect upon which count he would proceed. As before stated, there was but one cause of action, though stated in different ways. The evidence, it seems to us, would have justified a verdict on either count; it shows that the motorman in charge of defendant's car was either extremely negligent, or worse, was reckless of human life. Where there is evidence supporting two theories, upon either of which plaintiff might recover, and both are properly pleaded, the plaintiff is entitled to have both theories submitted to the jury, and it would be a denial of his legal rights to withdraw either from the jury's consideration.

3. It is contended that plaintiff should have been nonsuited for the reason his own evidence shows he voluntarily put himself in a place of peril and was thereafter negligent (down to the time of his injury) in failing to take proper precautions to protect himself. The facts do not justify the statement that plaintiff voluntarily chose to place himself near the north bound track where he was injured. He had to go there to take passage on the Lee avenue car, and had a right to go there for that purpose. Plaintiff testified that as he passed between the two Lee avenue cars, he looked east but saw no car coming on the north track. He was detained in a position of danger for two or three minutes by the bunch of passengers preceding him, and said he lingered behind for the purpose of giving the lady passengers an opportunity to get off the first car and aboard the second, and during the time he was standing on the street he did not look east for a car. Plaintiff's evidence is that his view of the north track was obstructed by the

people ahead of him and he could not have seen east, if he had looked, without stepping back on to the north track; that he was facing to get on the car and did not pay attention to the north track, knowing all the while that he was in a position of danger and that prudence required him to look out for a west bound car. As applicable to this phase of the case, defendant's counsel in his brief quotes the following from the case of Holwerson v. Railway, 157 Mo. 227, 57 S. W. 770; (quoted from Kirtley v. Railroad, 65 Fed. Rep. 391): "Conceding that there was duty upon the defendant's servants to anticipate that persons would be upon the track, this is set off by the duty on the part of the deceased to anticipate that trains would run on the track, and hence keep a lookout for them. Conceding that a careful lookout on the part of the defendant's servants would have revealed the deceased on the track, this is set off by the fact that a diligent outlook by the deceased would have revealed the approach of the engine at his rear. Conceding that the defendant's servants might have stopped the engine by the exercise of ordinary care before running onto the deceased, this concession is set off by the indisputable fact that the deceased after he might have discovered the engine, and even at a later stage in the events which led up to the catastrophe, might have stepped aside and have avoided the engine." In the same case, at page 225, we find the following:

"The whole law on the subject is so aptly expressed by Macfarlane, J., in Watson v. Railroad, 133 Mo. l. c. 250, that to attempt to improve upon it or to elucidate it would be as puerile as to try to 'paint the lily,' and we therefore simply quote and approve it. That learned jurist's formulation of the rule is this:

" 'In order to avoid the effect of the unquestioned negligence of the deceased, plaintiff charges that defendant's employees failed to observe proper care after the peril to which he had exposed himself was known to them, or by reasonable care might have been known.

The rule is thus invoked, which is well settled in this State, that, though one has negligently placed himself upon a railroad track in front of a moving train, those operating it owe him the duty of care to avoid injuring him, and his previous negligence will not bar a recovery if injury results to him from neglect of such duty.

" 'But to carry this doctrine to the length of saying that one, who knowingly crosses the track of a railway, in such close proximity to a moving train as to be struck thereby before he could cross, would not be guilty of concurring negligence, would virtually abolish the law of contributory negligence, altogether, and render nugatory a long and uniform line of decisions of this court. (Boyd v. Railroad, 105 Mo. 371, 16 S. W. 909, and cases cited.)' "

As held by Judge MARSHALL, who wrote the opinion in the Holwerson case, the doctrine of negligence and contributory negligence, in its last analysis, is the effort to determine the immediate and direct cause of the injury and to ascertain whether the plaintiff was guilty of negligence which contributed with the defendant's negligence to produce the injury, and wherever it appears from the ultimate facts proved that plaintiff was guilty of contributory negligence it ends the case.

It clearly appears from the evidence that plaintiff's negligence, if he was negligent in placing himself where he was hurt, was prior to that of the motorman's. This prior negligence was remote, not a direct or proximate cause of the injury and plaintiff was entitled to go to the jury, unless his own evidence shows that his prior negligence continued down to the time of the happening of the accident; if it did then his negligence concurred with that of the motorman and plaintiff cannot recover. We do not think that plaintiff's evidence convicts him of continuing negligence as a matter of law. It is true, he knew he was in a place of danger and that a west bound car might run over the north track at any moment, and before he could board the Lee avenue car,

but his view of the north track was obstructed and he was pressing forward to board the car which, if he had succeeded in doing, would have placed him out of danger. The plaintiff's duty to look and listen for an approaching car on the north track should be measured by his opportunity to see and hear the car, and his environment should be taken into consideration, and if, after considing these, it appears he used such care as a reasonably prudent person would have used in the same or similar circumstances, he would not, as a matter of law, be convicted of contributory negligence because he failed to discover the car in time to get out of its way. The question was one of fact for the jury and was submitted to them by the court on apporpriate instructions.

4. Defendant insists that the verdict is excessive and evinces prejudice and passion on the part of the jury. In this character of case, the damages cannot be mathematically calculated. They should be estimated on the basis of compensation. Pain of body and mental anguish resulting from an injury are elements that enter into the estimate of the damages. The uncertainty of correctly estimating what is a fair money compensation for pain of body and mental anguish is shown by the wide difference in the amounts assessed by juries in similar cases. We might go further and say that the reported cases also show a like contrast in the judgment of the appellate courts as to what are excessive damages. We think this is due more to temperament than to sound, conservative judgment. The question is one which must necessarily be deferred to the jury and the trial court as they are in a much better position, from having seen and heard the plaintiff and all the other witnesses, to correctly estimate the damages than is the appellate court who neither sees nor hears any of the witnesses, and we do not think it is wise practice for appellate courts to interfere with the verdicts of juries on account of the damages assessed and take upon themselves the task of estimating them in this class of cases. The

verdict of the jury should not be disturbed, unless the damages assessed are so excessive as to shock the moral sense, or it clearly appears that the jury was influenced by passion or prejudice. There is no indication in the record before us that the jury was inflamed by passion or was prejudiced, and we are not prepared to say that the damages are grossly excessive.

Discovering no reversible error in the record, the judgment is affirmed. All concur.