Jessie EOFF (Plaintiff), Respondent,

v.

Ransom T. SENTER (Defendant), Appellant.

No. 29940.

St. Louis Court of Appeals.
Missouri.

Nov. 5, 1958.

John D. Hasler, St. Louis, Charles Goodman, Clayton, for appellant.

Donald S. Hilleary, Harry L. Hilleary, St. Louis, for respondent.

HOUSER, Commissioner.

This is an action for actual and punitive damages. A trial jury returned a verdict for plaintiff for $325 actual and $2,000 punitive damages and defendant appealed.

The petition in one count alleged that plaintiff was struck by defendant's automobile as a result of defendant's negligence in failing to warn, in failing to maintain a careful lookout, and (in paragraph V) in negligently starting up his automobile "while the plaintiff was in front of said automobile in a position of danger of being struck and collided with by the automobile of the defendant." In paragraph VI plaintiff alleged that defendant "in starting and operating his automobile forward with the plaintiff standing immediately in front of him, he realized, or should have realized that there was a strong probability that serious harm might result and that in so doing under the aforesaid circumstances the conduct was reckless and wanton." Plaintiff prayed separately for actual and punitive damages. Defendant filed a motion to require plaintiff to plead more definitely and certainly wherein and in what manner defendant was wanton and reckless. This motion was overruled, whereupon defendant filed a general denial coupled with a plea of contributory negligence.

The facts favorable to the prevailing party are as follows: Plaintiff, an employee of McDonnell Aircraft Company in St.

Louis County, was assigned to guard the south entrance to one of the company's parking lots. Banshee Road, a public thoroughfare, ran by but did not abut on the south side of the lot. There was a space between, occupied by a railroad track. Access to the parking lot from the road was by an entrance drive which ran through a railroad underpass. Plaintiff had orders not to allow anyone to enter the lot through this entrance unless he had a blue badge entitling him to park in that restricted area. Plaintiff was stationed "just off" Banshee Road, about 30 feet from the edge of the road. Defendant, an employee of the company, drove off Banshee Road, headed into the entrance drive and stopped his automobile. Plaintiff walked to the driver's side of defendant's car and asked defendant if he had a blue badge. Defendant had a "clock" (identification) badge, which he exhibited, but not a blue badge. Informed that he could not enter without a blue badge, defendant wanted to know why. Plaintiff told him "That is the instructions I have." Defendant informed plaintiff that he had been parking in that lot "all the time" and had been entering at that place; that he had been on a different shift and this was his first day on the new shift; that he would like to come in just this one time and then make different arrangements in the future. Plaintiff refused to admit him and directed defendant to drive around and park in another lot. There was no profane language, no cursing, no threats. Defendant was not "particularly hostile or objectionable." Defendant did not raise his voice to plaintiff. Finally defendant said "Well, unless there is something larger than this car in front of me to stop me I am going in." Plaintiff said "I will be in front of you." Plaintiff then walked around in front of defendant's car, stood about two feet in front of the automobile and extended his hands, signaling a stop sign with his left hand and a right turn with his right hand. Through the windshield plaintiff could clearly see defendant sitting in the automobile. Four or five seconds after plaintiff gave defendant these motions "the automobile took a lunge forward," without any sounding of the horn. Plaintiff had time to put his hands out in front of him and jump up into the air. He landed on top of the hood on his stomach, spread out on the hood of the car, his head six or eight inches from the windshield. His arms were stretched out, down and wrapped around the hood. He was straddling the ornament. After plaintiff landed on the hood defendant speeded up, and proceeded through the underpass, through the parking lot gate and into the parking lot, at a speed of about 15 miles per hour. With plaintiff on the hood of his automobile defendant drove a total distance variously estimated at 115 to 200 feet. He made a circle or "U" turn in the lot and then parked his car. There were skid marks where he made the "U" turn and where he applied the brakes to stop. Witnesses heard his tires "squeal" as he made the turn. Plaintiff remained on the hood of the car until the car stopped, then slid off. Various guards assembled and remonstrated with defendant, who said he had been pushed around by the guard force as long as he intended to; that he would not "take it" any longer. One witness quoted defendant as saying that he was "tired of getting pushed around by the damn guards." Two days later plaintiff swore out an affidavit before a magistrate judge charging defendant with assault, and plaintiff testified in the trial of the criminal charge. Defendant was fined $25 on a reduced charge of careless and reckless driving.

Appellant's first point is that the court erred in submitting the case to the jury because the petition is a nullity in that it unites in the same count inconsistent, contradictory and self-destructive charges of negligence and reckless and wanton conduct. The propriety of the action of the court in submitting the case to the jury on inconsistent, contradictory and repugnant theories is not before us on this appeal. The precise question appellant raises is the sufficiency of the petition—whether the

petition is a *felo de se*. This question has been before the Supreme Court on at least four occasions.

In Raming v. Metropolitan St. Ry. Co., 157 Mo. 477, 57 S.W. 268, upon which appellant places his chief reliance, the petition in one count alleged that defendant's servant "carelessly and negligently" pushed plaintiff off a streetcar and "carelessly and wantonly" ran over him. [50 S.W. 791.] Four of the seven judges, sitting en banc, concurred in a holding that the petition was bad for duplicity because the same act could not be both negligent and wilful; that the allegations were so repugnant that any amount of testimony in support of them would be equally repugnant; that the petition was a *felo de se,* and that it was error to overrule a demurrer to the evidence.

In O'Brien v. St. Louis Transit Co., 212 Mo. 59, 110 S.W. 705, 706, the petition in one count alleged that defendant's servant beat and shot plaintiff's husband "negligently and with criminal intent." The petition was based upon § 2864, R.S.Mo., 1899, authorizing recovery for death "occasioned by the negligence, unskillfulness or criminal intent," etc. All seven of the judges, sitting en banc, concurred in a holding that the petition was good after verdict, and not a *felo de se*. Stating that the rule in the Raming case had not been followed in all its strictness in the later cases, Woodson, J., ruled that the petition stated a cause of action, whether the servant shot plaintiff's husband negligently or with criminal intent; that the only objection to the petition was that it stated "two causes of action in one and the same count * * * or, more accurately speaking, it states a single cause of action doubly;" that while this is inconsistent pleading, subject to motion to elect upon which of the two causes of action plaintiff would go to trial and subject to a demurrer to the petition, the doctrine of *felo de se* has no application because that doctrine operates only where one cause of action stated is destroyed by another

which shows that no cause of action exists in fact.

In Miller v. Harpster, 273 Mo. 605, 201 S.W. 854, the petition in one count alleged that defendant "carelessly, negligently, recklessly, and wantonly" ran a car against plaintiff. Division No. 1 held that the petition stated a good cause of action "upon whichever horn of the dilemma presented by the appellant the evidence might be hung" and that the trial court did not err in overruling a demurrer to the evidence; that appellant, not having sought reformation of the petition or an election between rival theories before trial, could not complain on appeal of "the course which he invited."

In Reel v. Consolidated Inv. Co., Mo. Sup., 236 S.W. 43, 46, the petition, in one count but in two parts, alleged in the first part the existence of the relationship of passenger and carrier on an elevator and an injury to plaintiff while a passenger, and contained a prayer for damages. In the second part plaintiff alleged the continuous operation of the elevator by the defendant after receiving knowledge of its dangerous condition and notice that it could not be run without imperiling lives, an injury during the period of such continued operation and a characterization of defendant's conduct as "reckless and wanton," followed by a prayer for punitive damages. Division No. 1 held that, construing the petition as a whole, it reasonably appeared that the injury was charged to have been caused by defendant's negligence, and that the petition was good after verdict; that the petition was sufficient to authorize an award of punitive damages.

In Carrow v. Terminal R. Ass'n of St. Louis, Mo.App., 267 S.W.2d 373, 377, the petition in one count set up eight grounds of negligence, together with a charge that in operating the train over the crossing under the circumstances defendant was guilty of wanton misconduct in "wilfully and negligently" failing to sound a warning or slacken the speed of or stop the train,

etc. This court held that the joinder of charges of both negligence and wilfulness did not render the petition a nullity so as to be subject to the objection that the charges were repugnant and self-destructive.

In Agee v. Herring, 221 Mo.App. 1022, 298 S.W. 250, 251, the petition in one count alleged a number of acts of negligence followed by an allegation that "the aforesaid acts of the defendant were committed with a reckless, willful and wanton disregard for the safety of others." The Kansas City Court of Appeals held that the petition stated a cause of action; that "an allegation of negligence and one of reckless, willful, and wanton acts are not wholly repugnant * * *" and that the petition was not a *felo de se*.

■ In the instant case plaintiff in one count pleaded claims based upon negligence and reckless and wanton acts. While negligent acts and wanton acts are distinguishable they are not necessarily repugnant. Evett v. Corbin, Mo.Sup., 305 S.W.2d 469; Cosentino v. Heffelfinger, 360 Mo. 535, 229 S.W.2d 546; Miller, Reel, Carrow, supra. The two claims could properly have been united in the same petition if stated in separate counts, Waechter v. St. Louis & M. R. R. Co., 113 Mo. App. 270, 88 S.W. 147, but were improperly united in the same count, because they were inconsistent. O'Brien; Boyd v. St. Louis Transit Co., 108 Mo.App. 303, 83 S.W. 287; 65 C.J.S. Negligence § 187(2). The petition was subject to motion to dismiss or motion to elect. O'Brien, Boyd, supra; Jordan v. St. Louis Transit Co., 202 Mo. 418, 101 S.W. 11. No motion to elect and no motion to dismiss for failure to state a claim upon which relief could be granted was filed by defendant. Instead defendant filed an answer, and by so doing waived the irregularity of plaintiff's pleading. O'Brien, Jordan, Boyd, supra. Under the cases cited we are bound to uphold the instant petition after verdict, no motion to elect and no motion to dismiss having been filed. See Crapps v. Mangham, 75 Ga.App. 563, 44 S.E.2d 133.

■ Appellant's second point is that the court erred in submitting the case to the jury on general negligence because the petition charged both general and specific negligence. This point must be disallowed for the reason that the court did not submit the case on general negligence. Instruction 1 was a submission of specific negligence. Instruction 1 contained the following predicates of a finding of negligence: That while plaintiff was standing in front of defendant's automobile, in danger of being struck if the car was driven forward, of which defendant had actual or constructive knowledge, defendant drove his car forward and struck plaintiff. The submission of these simple, elemental, ultimate facts was a submission of specific negligence within the rule of Thompson v. Keyes-Marshall Bros. Livery Co., 214 Mo. 487, 113 S.W. 1128, and other cases cited and adverted to in our opinion in Chiodini v. Terminal R. Ass'n of St. Louis, Mo.App., 287 S.W. 2d 357.

■ Appellant's third point is that the court erred in submitting the case to the jury for fatal variance between allegation and proof; that whereas the petition alleged negligence and Instruction 1 submitted the case on the theory of negligence there was no proof of negligent conduct; that all of plaintiff's evidence tended to establish a case of deliberate, intentional and premeditated assault with an automobile. With this we sharply disagree. Clearly the evidence is susceptible to two permissible inferences: that defendant was negligent in the extreme, or worse, was guilty of wantonness or recklessness. We cannot say, as a matter of law, that the evidence of deliberate and intentional assault is preclusive or that reasonable minds could not find defendant guilty of failure to exercise the highest degree of care. The facts are like the facts in McClanahan v. St. Louis Public Service Co., Mo.App., 242 S.W.2d 265, reversed 363 Mo. 500, 251 S.W.2d 704, and the several cases cited in our opinion in that case, 242 S.W.2d, loc.cit. 269. In these cases plaintiff is found in a precarious

situation of such nature that harm likely will befall him if defendant takes a certain course of action. Defendant has actual or constructive knowledge of the position and situation of plaintiff and thereafter, instead of exercising the required degree of care to avoid injuring plaintiff, defendant takes the action which immediately and instantly inflicts injury. Previous to McClanahan these cases were ruled under the humanitarian doctrine but upon transfer for reexamination of the law the Supreme Court in McClanahan ruled that the humanitarian rule is not applicable in this situation; that such facts justify the submission of the case upon the theory of primary negligence or upon the theory of wilful, wanton or reckless conduct. The act of the defendant which occasions injury under these circumstances is recognized as an act of negligence—the failure to exercise the degree of care required by law. In the instant case the jury might properly have characterized defendant's act as negligent and yet awarded punitive damages on the ground that it manifested such reckless indifference to the rights of plaintiff that the law would imply that an injury resulting therefrom was intentionally inflicted, under the rulings in McKenzie v. Randolph, Mo.Sup., 257 S.W. 126, and Reel v. Consolidated Inv. Co., supra. In McClanahan, 251 S.W.2d loc.cit. 708, the Supreme Court indicated that "Reckless conduct may involve and include negligence  *  *  *." The jury could have found both in this case. There was no variance between allegation and proof.

Appellant's fourth point is that Instruction 1 was fatally erroneous in that it placed an improper burden upon defendant, requiring him to exercise the highest degree of care when under the law it was his duty to exercise only ordinary care, since his operation of the automobile was upon private property and not upon a public highway. This point is without merit. Section 304.010 RSMo 1949, V.A.M.S. requires that every person operating a motor vehicle on the highways of this state exercise the highest degree of care but the word "highways" was used in its popular rather than its technical sense and was intended to include all highways traveled by the public regardless of their legal status. Phillips v. Henson, 326 Mo. 282, 30 S.W.2d 1065; Kelly v. Lahey, Mo.App., 232 S.W.2d 177, and cases cited. We find no evidence that at the time plaintiff was struck defendant was operating the motor vehicle on the privately owned parking lot of the aircraft company. At that time the automobile was either on Banshee Road, a public drive, or on the shoulder, some 15 feet from the traveled portion of the road. Plaintiff testified that he worked on the outside of the parking lot, taking his post about 30 feet from the edge of Banshee Road and in front of the railroad underpass which ran between the road and the parking lot; that when defendant approached and stopped, the rear wheels of defendant's automobile were "maybe on the shoulder" of Banshee Road, "maybe fifteen feet from" Banshee Road. Plaintiff's witness Martin testified that the rear of defendant's car extended out in Banshee Road when it stopped. From the testimony of plaintiff's witness Dees it is apparent that the incident occurred at a point south of the railroad underpass. Defendant himself testified that the front of his automobile had not entered the parking lot gate at the time of the incident in question; that "there is a space, I would say, from the edge of Banshee Road, directly under the railroad tracks, that is twenty feet to thirty feet long there, and my car was, I would say, midway in that space, and the gate, which I had never seen closed, the actual entrance to the parking lot itself, was on the opposite side of the railroad tracks." From this evidence we conclude that defendant was operating his automobile upon a "highway" traveled by the public within the meaning of § 304.-010, supra, and not upon private property. Furthermore, both parties tried the case on the theory that defendant owed plaintiff the duty to exercise the highest degree of care. That degree of care was referred to both in plaintiff's petition and in defendant's answer. In paragraph 4 of the answer de-

fendant, pleading contributory negligence, alleged that plaintiff placed himself in a position of being struck "when in the exercise of the highest degree of care, defendant was unable to avoid such collision." We rule that the court properly submitted the highest degree of care as the proper measure of defendant's duty under the circumstances.

■■■■ Finally, appellant attacks Instruction 8, which follows:

"The Court instructs the jury that if you find in favor of the plaintiff under Instruction No. 1, and award him damages, and if you further find that the defendant knew prior to and while driving his car forward under the circumstances outlined in Instruction No. 1, that his conduct created an unreasonable risk of bodily harm to plaintiff and that defendant knew that there was a high degree of probability that substantial harm would result to plaintiff, if you so find, then you are instructed that the conduct of the defendant, under the aforesaid circumstances would be in reckless and wanton disregard for the welfare and safety of the plaintiff, if you so find, and, in addition to compensation for actual damages, if any, you may allow further damages known in law as exemplary or punitive damages, as you may think proper and suitable punishment for the defendant for such wrongful conduct and as a wholesome warning to others."

Appellant claims that the instruction assumes and does not require the jury to find as a fact that defendant's conduct created an unreasonable risk of bodily harm to plaintiff; that it usurps the function of the jury by telling the jury that certain things constitute reckless and wanton conduct instead of requiring the jury to find that the conduct of defendant under the circum-

stances was reckless and wanton. We find no fault with Instruction 8. It requires the jury to find for plaintiff under Instruction 1, which in turn requires a finding that while plaintiff was standing in front of defendant's automobile, in danger of being struck if the car was driven forward, of which defendant had actual or constructive knowledge, defendant drove his car forward and struck plaintiff. It requires the jury to further find knowledge on the part of defendant that his conduct created an unreasonable risk of bodily harm to plaintiff, and knowledge on the part of defendant that there was a high degree of probability that substantial harm would result to plaintiff. These are the essential elements of reckless and wanton misconduct. Thomasson v. Winsett, Mo.App., 310 S.W.2d 33, and cases cited. The instruction assumes none of these elements. It properly requires that the jury find them as facts, and properly characterizes the acts of defendant as wanton and reckless if the facts should be so found. The province of the jury was not invaded either in the requirements of a finding of recklessness and wantonness or in the assessment of punitive damages upon such finding. The language of the instruction "you *may* allow further damages" is permissive and not mandatory.

Finding no error in any of the points raised by appellant, the Commissioner recommends that the judgment of the circuit court be affirmed.

PER CURIAM.

The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.

The judgment of the circuit court is, accordingly, affirmed.

RUDDY, P. J., and WOLFE and ANDERSON, JJ., concur.