**HOME INDEMNITY COMPANY,
Plaintiff-Appellant,**

v.

**Emmett L. POLITTE, Jim Ford, City of Columbia, Missouri, and Liberty Mutual Insurance Company, Defendants-Respondents.**

**No. WD 31022.**

Missouri Court of Appeals,
Western District.

Aug. 4, 1980.

Knight, Ford, Wright, Atwill & Parshall, Columbia, for plaintiff-appellant.

Butcher, Cline & Mallory, Cullen Cline, Columbia, for defendants-respondents.

Brown, Willbrand, Simon & Eng, B. Daniel Simon, Patrick J. Eng, Columbia, for Politte.

Before TURNAGE, P. J., and SHANGLER and MANFORD, JJ.

TURNAGE, Presiding Judge.

Home Indemnity Company filed a declaratory judgment action against its policyholder Emmett L. Politte; Jim Ford, who had a claim against Politte; and the City of Columbia and Liberty Mutual Insurance Company, who have possible subrogation claims. The court entered a judgment adverse to Home and this appeal follows. Home contends the judgment is not supported by substantial evidence; was against the weight of the evidence; and was an erroneous application of the law to the facts. Affirmed.

Home issued a homeowner's policy to Politte. The policy afforded personal liability coverage for all sums which Politte would become legally obligated to pay as damages because of bodily injury caused to others, but contained an exception that the policy did not cover bodily injury or property damage which is either expected or intended from the standpoint of the insured.

In April, 1977, Politte became involved in an argument with another man at the Eastgate IGA Store in Columbia. The police were summoned and upon their arrival they placed Politte under arrest and put him in a police car to be taken to the police station. While he was in the back seat of the police car, handcuffed and alone, Politte got on his back and started kicking at the door and window frames of the car. He succeeded in pushing a part of the window frame outward. Politte admittedly had been drinking and was using foul language to the officers, but the evidence indicated he had not threatened bodily harm to any of the officers. Politte was arrested by Officers Kaiser and Brown with some assistance by Officer Thomas who arrived in another police car.

When the officers arrived at the police station with Politte he was forcibly taken into a room in the basement. The room was referred to as a locker room, a conference room and roll call room. The room had a table and chairs and also some lockers for the use of officers. While Politte was in the room he continued his foul language and his loud demands that he be released. There was evidence that he was kicking at chairs in addition to his loud talk and refused to stay in a chair unless he was pushed down. After Politte was taken into the conference room, Officer Jim Ford of the Columbia Police Department heard the noise and entered the room to see if he could be of assistance. Politte's loud and foul talk continued after Officer Ford entered and it was decided that Politte should

be taken upstairs and placed in a cell. A group of officers, consisting of Kaiser, Brown, Thomas and Ford, began trying to take Politte upstairs. According to the testimony of Officers Kaiser, Thomas and Ford, Politte was very belligerent and did not want to go upstairs. As the group started on the trip upstairs, Officers Kaiser and Thomas were ahead of Politte and Ford and Brown were behind him. Ford was the officer immediately behind Politte and all of the testimony indicated that Politte would move a few feet but then stop, at which time it was necessary for Ford to push and shove Politte in order to get him moving again. Ford stated that he did this by pushing on the upper part of Politte's body.

A portion of Ford's deposition was read in evidence, although Ford himself did not testify. In his deposition testimony, Ford stated that he had pushed Politte several times to keep him moving when Politte suddenly raised his right foot and kicked backward in the direction of Ford. Ford stated that the heel of Politte's shoe struck him in the knee, his knee buckled and he almost fell down from the blow. The knee later caused him sufficient difficulty that he had to seek medical advice and eventually had to undergo an operation on the knee.

Officer Kaiser testified that he led the way as the group left the conference room and was aware that Ford was pushing Politte to keep him moving. He said at one point he heard hollering and apparently was far enough ahead of the group that he had to return a short distance to rejoin the group. When he returned he saw Politte lying on the floor with Ford and Brown standing next to him. Kaiser said he did not hear anyone say anything about being struck or being injured. Kaiser did not recall what kind of shoes Politte was wearing.

Officer Thomas testified that he was ahead of Politte as the group started for the cell and he could only see Politte as he turned his head back toward the group behind him. He said at one time he saw Politte stop and kick toward Ford who was

behind Politte. He did not see Politte's foot actually strike Ford and he did not hear any outcry from Ford nor did he hear anyone make any statement that they had been struck or injured. He did not testify to any partial collapse of Ford's leg. Officer Thomas stated that at one point the group behind him, including Ford and Politte, were in a big heap on the floor where they had apparently fallen in their efforts to prod Politte into a continuous motion. Officer Thomas further stated he did not hear Politte make any threats toward anyone.

Politte testified that he had consumed some liquor on that day but denied that he was intoxicated. He admitted that he was very unhappy at being arrested and admitted that he had used some strong language in demanding to know why he had been arrested and in requesting that he be released. He stated he had on a pair of Hush Puppies shoes at the time which had a sponge rubber crepe sole. Politte stated that as the group left the conference room, Ford was behind him pushing and shoving. Politte said at one point he and Ford and the other officers behind him all fell to the floor. He stated that at all times after he was placed in the police car his arms were handcuffed behind him. He said when he fell down, he fell face down and Ford grabbed the handcuffs and drug him along the floor and struck his head against a wall.

Politte unequivocally denied that he at any time ever kicked Ford and denied that he ever had any intent to injure Ford.

Ford, in his deposition, stated that Politte had called him at home after the incident in the police station and threatened to "get him" because of Ford's actions toward Politte.

Home introduced the original petition Ford had filed against Politte for the injury to his knee in which it was alleged that Politte had intentionally kicked and injured Ford. An amended petition was filed in which it was alleged that Politte negligently kicked and injured Ford.

Home filed its petition for declaratory judgment in which it alleged the issuance of its policy to Politte and provisions of the

policy relative to the exclusion for bodily injury or property damage which is either expected or intended from the standpoint of the insured and the filing of the suit against Politte by Ford. The petition alleged the original petition filed by Ford alleged that Politte had intentionally kicked Ford, alleged the filing of an amended petition by Ford in which Count I alleged Politte had negligently kicked Ford and in Count II alleged that Politte's acts described in Count I were willful, wanton, and in violation of Ford's rights, and prayed exemplary damages. The petition also alleged that the City of Columbia and Liberty Mutual had paid benefits under the Workmen's Compensation Law to Ford. The petition prayed for a declaratory judgment to declare the rights and obligations of the parties under the insurance contract issued by Home to Politte and to adjudge that such policy did not provide coverage to Politte, to the City or Liberty Mutual, nor did such policy require Home to defend Politte in the suit brought by Ford or to pay any judgment that might be rendered against Politte in such suit.

The court entered findings of fact and conclusions of law. In its findings the court found the issuance of the insurance policy by Home to Politte and the obligation thereunder for Home to defend any suit brought against Politte and to pay any sums covered against Politte for bodily injury or property damage even if the allegations for the suit are groundless, false or fraudulent. The court found that Ford had brought suit against Politte asking damages in Count I for negligent acts, and in Count II for punitive damages. The court found the policy issued by Home to Politte was in full force and effect at the time the injuries were alleged to have been sustained by Ford and found the exclusion contained in the policy. In its conclusions of law the court found that Count I was a claim for bodily injury because of the negligence of Politte and that the claim of Ford against Politte comes within the terms of the policy issued by Home to Politte. The court con-

cluded that Home is required to defend Politte in the suit brought against him by Ford and to pay any damages rendered against Politte under Count I.[1]

In this declaratory judgment suit the burden was on Home to prove facts which would make the policy exclusion applicable. *Farmers Alliance Mut. Ins. Co. v. Reed*, 530 S.W.2d 470, 477[5] (Mo.App.1975).

Home contends the judgment requiring it to defend Politte and to pay any damages adjudged under Count I of Ford's petition is erroneous because it is not supported by substantial evidence, is against the weight of the evidence, and erroneously applies the law to the facts. From the facts above stated it is apparent there was substantial evidence to support the court's judgment that Home was required to defend Politte and pay any damages assessed under Count I of Ford's petition.

The essential question urged by Home is that the evidence shows that the injury sustained by Ford was the result of an intentional kick by Politte and under the exclusion in the policy, Home was not required to defend any suit for intentional acts of Politte or to pay any judgment resulting from those acts. The exclusion in the policy here involved is the same as that considered by this court in *Hanover Insurance Company v. Newcomer*, 585 S.W.2d 285 (Mo.App.1979) and in *Curtain v. Aldrich*, 589 S.W.2d 61 (Mo.App.1979). In both *Hanover* and *Curtain* this court held the exclusionary clause here involved means intentional acts on the part of the insured are excluded from coverage. In this case Home undertook the burden to prove that Politte intentionally kicked Ford and caused the injury to Ford's knee. As shown by the statement of facts heretofore set out, the only evidence that Politte intentionally kicked Ford was the deposition testimony of Ford read in evidence. Home now argues that all of the evidence concerning Politte's kicking at the door and window frames of the police car and the kicking of the chairs in the conference room constituted evidence that he intentionally kicked Ford. All of

---

1. No question is presented concerning Home's obligation under Count II of Ford's petition.

the evidence concerning Politte's kicking does not reach the central issue here and this is whether or not Politte intentionally kicked Ford at the time Ford sustained his injury. Regardless of Politte's actions before and after Ford sustained his injury, before the exclusion may come into play it must be shown that Ford's injury was intentionally inflicted by Politte.

On this issue the court had before it only a portion of the deposition testimony of Ford read by Home into evidence. Officers Kaiser and Thomas were the only officers in the group with Ford at the time the injury is alleged to have taken place who testified and neither of them corroborated Ford's version. Although Thomas said he saw Politte make a kicking motion in the direction of Ford, he did not see any contact between the foot and Ford. More importantly, neither officer corroborated Ford's version that he nearly fell down as a result of the blow. While it may be considered that Thomas and Kaiser were both in front of Ford and Politte, still neither officer heard Ford make any complaint of injury.

Furthermore, the evidence introduced by Home was silent as to the kind of shoes Politte was wearing at the time of the alleged injury, and none of the officers who testified could remember what kind of shoes Politte had on. Although Ford testified his knee showed a bruise after he was kicked, he stated the bruise did not show the outline of any object such as a shoe heel. Against this evidence was the testimony of Politte in which he steadfastly denied that he kicked Ford. Further, the testimony by Politte that he was wearing shoes with a sponge rubber crepe sole was uncontradicted and the court could well have found that type of shoe could not have inflicted the injury sustained by Ford. In addition, there was evidence on the part of the officers who were present that there was considerable scuffling and at least at one point all of the officers, including Ford, had fallen to the floor.

There was substantial evidence to support the court's judgment that Home did not show that the exclusionary clause relieved it of its obligation to defend Politte in Ford's suit against him to pay any damage adjudged against Politte in Count I of Ford's petition. This court is unable to say that the judgment is against the weight of the evidence and Home has not demonstrated any erroneous application of the law to the facts. The only determination the court was required to make was whether or not there was sufficient evidence from which it could find that Politte inflicted an intentional injury upon Ford. When it found that Home was required to defend Politte on Count I of Ford's petition and to pay any judgment adjudged on that count, the court found that Politte had not inflicted any intentional injury upon Ford even though the court did not declare in so many words that no intentional injury was inflicted by Politte. Rule 73.01(b).

It is beyond question that when there is a conflict in the evidence in a court-tried case, appellate courts give due deference to the trial court's ability to observe the conduct and demeanor of witnesses. *Roth v. Roth*, 571 S.W.2d 659, 665[4, 5] (Mo.App.1978). Here, the trial court saw and heard the witnesses and resolved the conflict in favor of the finding that Politte did not inflict any intentional injury on Ford. The judgment was supported by substantial evidence and this court cannot say it was against the weight of the evidence. The trial court did not erroneously declare or apply the law, and under those circumstances the judgment should be affirmed. *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976).

Home states in its brief that this judgment leaves it in a hopeless conflict with its policyholder. Actually there is no conflict between Home and Politte because Politte's version that he never kicked Ford and thus never caused him any injury is the same position Home would espouse in Ford's suit. However, even if Home and Politte were in conflict, the judgment in this declaratory judgment action resolves the question of whether or not Home is obligated to defend Politte on Count I and pay any damages assessed under that count. *Farmers Alliance Mut. Ins. Co. v. Reed, supra*, at p. 476[2].

948

The motion of Ford and Liberty Mutual to dismiss the appeal for failure of Home's brief to comply with Rule 84.04(d) is overruled.

The judgment is affirmed.

All concur.