**Jim FORD, Plaintiff-Appellant,**

v.

**Emmett POLITTE,
Defendant-Respondent.**

**No. WD 31972.**

Missouri Court of Appeals,
Western District.

June 9, 1981.

Cullen Cline, Columbia, for plaintiff-appellant.

Larry M. Woods, Columbia, for defendant-respondent.

Before KENNEDY, P. J., and SHANGLER and SOMERVILLE, JJ.

KENNEDY, Presiding Judge.

This is an appeal from a judgment for defendant granted by the trial court notwithstanding a jury verdict for plaintiff in the amount of $12,400.

Plaintiff Jim Ford was a Columbia peace officer who was injured when he was kicked on the knee by defendant Emmett Politte, whom he was ushering to the jail. The petition alleged that the defendant negligently kicked the plaintiff, and the case was submitted to the jury on that theory. The defendant tendered and the court gave, probably to the utter bewilderment of the jury, an instruction which told the jury that their verdict should be for the defendant if they found that he had intentionally kicked the plaintiff. As earlier noted, the jury verdict found the issues in plaintiff's favor and assessed his damages at $12,400.

The question to be resolved upon this appeal is the correctness of the trial court's setting aside the verdict and granting a judgment for the defendant on the ground that there was no evidence that the kick was negligent, but that the evidence showed conclusively that the kick, if any, was intentional.

We hold that the court was correct in granting judgment for defendant, in that there was no evidence that defendant's act in kicking the plaintiff was negligently done. The judgment is therefore affirmed.

The evidence was as follows: Plaintiff Ford was a police officer of the City of Columbia. On April 2, 1977, at about 5 o'clock p. m., he went to the station house. As he entered the station he heard someone yelling obscenities. Correctly assuming that it was a prisoner giving someone trouble, he went to the roll-call room, or locker room, where Reserve Officers Kaiser and Brown had the defendant, Politte, under arrest. Politte, under the influence of alcoholic drink, was cursing at them. As Ford entered the room he asked Officer Kaiser what the problem was. Politte in a very loud voice yelled, "Who are you (epithet omitted)"? Kaiser explained to Ford that Politte had been arrested at Eastgate for an assault. Kaiser was trying to fill out an arrest report but Politte would give him none of the necessary information but continued to curse at him. They removed his wallet from his purse and secured the information they needed for the arrest report.

Politte in the meantime was kicking a chair. He repeatedly struggled to get up from the chair where he was seated and was forced back onto it. He knocked tables around with his knee. He acted as if he were "about ready to strike someone". The officers concluded to put him in a cell. The jail was in the same building. Politte refused to walk down the hallway—actually a passageway between rows of lockers—to the jail. Ford took a position behind Politte and pushed him forward a step. Politte stopped, Ford pushed him again. Another step. At one point, as they were progressing thus slowly along the hall, as Ford "was beginning to put my hands on Mr. Politte's body, my fingers on his body, I felt his body move, and the next thing I felt was a very sharp pain in my knee.... My knee just gave. I braced myself up against the lock-

ers ... I would have fell to the floor if I hadn't ..." Ford started to put his hands on Politte again, when "he started to struggle, our legs got tangled up, his two legs got tangled in my right leg, he went forward into the hallway ... fell partially down." Politte would not get up off the floor, telling the officers to "go to hell". The officers dragged him six or seven feet to a stairway leading up to the jail. Ford told him that he could walk up the stairway or they would drag him up. Politte decided he would walk up. He got to his feet and walked up the stairs, where he was turned over to the Boone County jailers at the top of the landing.

Officer Larry Brown was behind Ford at the time of the kick. He described the kick as follows: "I observed Mr. Politte cock his head to the right, looking back and then raising his right foot and kicking back with that right foot... I observed Officer Ford grab ahold of one of the lockers ..."

The other officers testified to Politte's abusiveness, his obstreperousness and his resistance to the officers' efforts to subdue him.

■ A submission on the theory of negligence is not justified by evidence only of an intentional deliberate act. The two are inconsistent and mutually exclusive. *Martin v. Yeoham*, 419 S.W.2d 937 (Mo.App.1967).

■ With appellant's brief before us, we have searched this record in vain for some evidence that would support his theory that the kick to plaintiff's knee was negligently placed. All the circumstances point to a deliberate, purposeful kick aimed at the plaintiff, and no abstruse process of reasoning can torture it into an act of negligence. *Martin v. Yeoham, supra.*

The case is unlike those relied upon by the appellant, such as *Eoff v. Senter*, 317 S.W.2d 666 (Mo.App.1958), where the defendant insisted on driving into a parking lot, and the guard stood in his path and forbade his entering. The defendant drove his car forward. The guard leaped into the air and landed on top of the hood. With the plaintiff on the hood of his car, the defendant drove his car to a parking place and parked it. The St. Louis Court of Appeals said: "Clearly the evidence is susceptible to two permissible inferences: that defendant was negligent in the extreme, or worse, was guilty of wantonness or recklessness. We cannot say, as a matter of law, that the evidence of deliberate and intentional assault is preclusive or that reasonable minds could not find defendant guilty of failure to exercise the highest degree of care." 317 S.W.2d at 670.

The distinction between *Eoff* and the present case is that the driver of the car in *Eoff* did not have as his purpose the assault upon the plaintiff. He intended to drive his car into the lot and park it, and he would not be deterred by the plaintiff's presence in his path. The case would be more like the one before us if, for instance, the guard had leaped aside out of the defendant's path and the defendant had swerved his car in order to strike the plaintiff.

*Eoff* and such cases as *Sharp v. Robberson*, 495 S.W.2d 394 (Mo. banc 1973), and others hold that there is no inconsistency between ordinary negligence (which would justify compensatory damages) and a wanton and reckless negligence, which would justify punitive damages. Both may be submitted and the jury may return a verdict for compensatory damages on the basis of a finding of ordinary negligence, and also a verdict for punitive damages on the basis of a finding of willful and wanton recklessness. The latter is still negligence, though of an extreme variety. But those cases do not hold that one can prove only an intentional, purposeful and deliberate act, and choose to submit on negligence. *Crull v. Gleb*, 382 S.W.2d 17, 22 (Mo.App.1964).

Ordinary negligence is, so to speak, a "lesser included offense" of gross, wanton and willful negligence, and of recklessness, and of reckless disregard of consequences, all of which are aggravated varieties of negligence. But an intentional kick, with the plaintiff as the target, as was the case here, is of a different species.

There is no conflict between our present holding and *Home Indemnity Co. v. Politte*,

602 S.W.2d 943 (Mo.App.1980), which was a declaratory judgment case initiated by Politte's homeowner's insurance carrier to determine whether its policy obligated it to defend Politte against Ford's suit for damages. *Home Indemnity* claimed that the incident came within a provision of the policy which excluded coverage where the bodily injury was expected or intended from the standpoint of the insured. The court noted that the burden was upon *Home Indemnity* to prove that the incident came within the policy exclusion, 602 S.W.2d at 946. The case was tried upon an entirely different record than the one now before us. There Politte testified, as he did not in this case, and denied that he had kicked Ford at all. Officer Brown, and the other officers, who corroborated Ford's version in the present case, did not testify in the *Home Indemnity* case. *Home Indemnity* turned upon a conflict in the evidence, which the trial court had resolved against Home Indemnity, and the case simply held that the court's judgment was supported by substantial evidence, was not against the weight of the evidence, and was not an erroneous application of the law to the facts and affirmed it, citing *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

Appellant also complains of the court's permitting Officer Brown to testify to his conclusion that Politte's kick was "very deliberate". Our ruling on that question could have no effect on our decision in the case, for appellant is not complaining about the jury's verdict. He would like us to reinstate the verdict of the jury. The question before the trial court on the motion for judgment notwithstanding the verdict, and the question before us on this appeal, is not whether there was evidence that the kick was intentional—there was plenty of that without the witness's objected-to conclusion—but rather whether there was any evidence that the kick was negligent.

The judgment is affirmed.

All concur.