WILL COOPER, Respondent, v. NATIONAL LIFE INSURANCE COMPANY OF THE UNITED STATES OF AMERICA, Appellant.

St. Louis Court of Appeals. Opinion Filed July 2, 1923.

1. **INSURANCE:** Accident Insurance: Insured Injured by Shot: Bullet Intended for Another: Intentional Act: Unintentional Act: Distinguished. Within the meaning of an exemption clause in an accident insurance policy, exempting liability for injuries caused wholly or in part by the intentional act of any person other than

Cooper v. Nat. Life Ins. Co.

the insured, an act does not consist alone of power exerted, but includes the immediate effect of the power exerted, so where one person shoots another, the act consists in not only the power exerted in discharging the leaden ball from the revolver, but includes the striking of such other person with the ball so discharged, therefore the power exerted may be intentional while the immediate effect of the power exerted may be unintentional, and it requires both the power exerted and its immediate effect to constitute the act, and though the power exerted may be intentional, yet if the immediate effect thereof is unintentional then the act is an unintentional act.

2. ———: ———: ———: ———: **Exemption Clause: Insurer Liable Unless Act was Wholly Intentional.** An accident insurance company cannot escape liability under a clause in a policy exempting liability for injuries caused wholly or in part by an intentional act of any person other than the insured, unless it shows that the act which caused the injury was wholly intentional, not partially so; the expression, "injuries caused wholly or in part by an intentional act" does not mean injuries caused by an act wholly or in part intentional.

3. ———: ———: ———: **Accidental Injury: Policy: Exemption Clause: Rule of Construction.** Where the injury suffered by the insured was typically accidental, the insurer cannot be relieved from liability for such an injury by a clause in the nature of an exception in a policy insuring against accidental injuries, unless the language used is unequivocal in its meaning, and if the language employed is open to construction, the rule of strict construction against the insurer and of liberal construction in favor of insured is applied with peculiar vigor.

4. ———: **Vexatious Refusal to Pay: Undecided Question of Law: Damages and Attorney's Fees: Not Recoverable.** Where a question of law was involved as to the liability of an accident insurance company, under the terms of the policy in suit, involving a question of law as to the construction of an exemption clause in the policy, which was an open question in this State at the time of the trial, the insurance company clearly had the right to litigate such question in the courts without being penalized therefor, and the insured was not entitled to recover damages and attorney fees for vexatious refusal to pay the loss, and the trial court erred in submitting such issue to the jury by plaintiff's instructions.

# Appeal from the Circuit Court of the City of St. Louis. —*Hon. Franklin Miller,* Judge.

REVERSED AND REMANDED (*with directions*).

*Martin T. Farrow* for appellant.

*J. B. Boyer,* of Counsel.

(1)   The court erred in refusing to give defendant's instruction No. 1 in the nature of a demurrer to the evidence at the close of plaintiff's case in chief; defendant's instruction No. 2 (13)·in the nature of a demurrer to the entire evidence; in giving instructions Nos. 1 and 2, and refusing defendant's requested instructions Nos. 14 and 15.   (a)   The instructions as given dealt entirely with matters not in dispute, and entirely ignored the only essential question: Were the injuries excluded from the coverage of the policy by the intentional act clause?   Strother v. Business Men's Acc. Ass'n, 193 Mo. App. 718, 188 S. W. 314.   (b)   The intentional act clause here involved must be distinguished from the so-called "design" and "intentional injury" clauses. Strother v. Business Men's Acc. Ass'n, 193 Mo. App. 718, 188 S. W. 314; Continental Casualty Co. v. Cunningham, 188 Ala. 159.   (c)   The act of Barry in shooting was admittedly intentional, and it is immaterial that the exact injuries resulting were not intended or that the wrong person was hit.   Strother v. Business Men's Acc. Ass'n, 193 Mo. App. 718, 188 S. W. 314; National Life Ins. Co. of the U. S. v. Coughlin, (Colo.) 212 Pac. 486; Railway O. & E. Acc. Ass'n v. Drummond, 56 Neb. 235; Ryan v. Continental Cas. Co., 94 Neb. 35.   (d)   To hold defendant liable is to substitute a contract made by the court for one made by the parties.   Mitchell v. German Com'l Acc. Co., 179 Mo. App. 1, 161 S. W. 362; Frankel v. Massachusetts Bonding & Ins. Co., 177 S. W. 775; Bothmann v. Metropolitan Life Ins. Co., 231 S. W. 1007; Travelers' Ins. Co. v. McCarthy, 15 Colo. 351.   (e)   In order to construe this policy so as to cover the injuries we must add words not used or change words used, transpose some and add others.   (f)   The

purpose of the clause is obvious and well founded in the history of its development and practical experience. (g) The validity of the clause is settled beyond dispute. Strother v. Business Men's Acc. Ass'n, 193 Mo. App. 718, 188 S. W. 314; Washington v. Union Cas. & Surety Co., 115 Mo. App. 627, 91 S. W. 988; Phelan v. Travelers' Ins. Co., 38 Mo. App. 640. (2) The court erred in giving instruction No. 3 and refusing defendant's requested instruction No. 14. (a) There is no liability under the policy and obviously the refusal to pay was not vexatious. (b) If there was liability, an open question was involved giving the defendant the right to litigate it. Non-Royalty Shoe Co. v. Phoenix Assur. Co., 277 Mo. 399, 210 S. W. 37; Berryman v. Southern Surety Co., 285 Mo. 379, 227 S. W. 96; State ex rel. v. Allen, — Mo. —, 243 S. W. 839. (c) There is no evidence of vexatious refusal. Merkel v. Ry. Mail Ass'n, 205 Mo. App. 484, 226 S. W. 299; Widdicombe v. Penn Mutual Life Ins. Co., 241 S. W. 437; Miller v. Firemen's Ins. Co., 206 Mo. App. 475, 229 S. W. 261; Berryman v. Md. Motor Car Co., 199 Mo. App. 503, 204 S. W. 738; Bennett v. Standard Acc. Ins. Co., 209 Mo. App. 81, 237 S. W. 144.

*Arthur F. C. Blase* for respondent.

(1) To relieve an insurance company of liability for disability growing out of injuries intentionally inflicted upon the insured, three elements must be present: An intentional act, directed against a specific person, and an injury to such specific person directly resulting from such intentional act. 1 C. J. 442; Matson v. Travelers' Ins. Co., 93 Me. 469; Newsome v. Travelers' Ins. Co., 143 Ga. 785; Gen. Acc. etc. Corp v. Hymes, 185 Pac. 1085; Travelers P. Assn. v. Fawcett, 56 Ind. App. 120; Hutchcraft's Exr. v. Travelers' Ins. Co., 87 Ky. 300. (2) The "intentional act" clause does not apply in a case where A intentionally fires a shot at B, but which shot hits C, the insured. Hutchcraft's Exr. v.

Travelers' Ins. Co., 87 Ky. 300. (3) Where there is a doubt in respect to the meaning of the terms of a clause in an insurance policy, the doubt must be resolved in favor of the interpretation of the insured, although intended otherwise by the insurer, as the presumption is that on this construction the insured took the policy. Renn v. Supreme Lodge K. of P., 83 Mo. App. 449; Mitchell v. Accident Co.; 179 Mo. App. 6.

SUTTON, C.—This action is founded, on an accident insurance policy. The policy in general terms insures respondent against bodily injuries affected solely through external, violent and accidental means and in a subsequent clause makes provision for exemption from liability as follows:

"This policy does not cover injuries, fatal or nonfatal, . . . which are caused wholly or in part by the intentional act of any person other than the insured (assaults committed on the insured for the sole purpose of burglary or robbery excepted)."

The abstract of the record, which we commend for its conciseness, discloses that the respondent during the life of the policy suffered injuries to his person of the character and in the manner following:

On the afternoon of October 24, 1920, the insured, Will Cooper, Calvin Boyd, Linkie Perkins, Floyd Hull and Eugene Blair, all colored, were in a soft drink parlor in the city of St. Louis. There was an old grudge of about two years standing between George Barry and the Perkins woman. An altercation arose between them and Barry struck at the Perkins woman and called her a bad name, and she in turn called him a bad name and he again struck at her. Blair interfered and told Barry to go. Barry went out and in a few minutes came back flourishing a gun in his hand and aiming it at the Perkins woman, called her bad names. She seeing the gun and knowing he was after her, grabbed the insured, who was not a party to the quarrel, and got back of him so that

he was between Barry and her. Barry started shooting and the first shot struck the insured in the right thigh, which shot caused the disability for which indemnity is sought. After this first shot the insured broke away from the Perkins woman and Barry then shot her twice.

Final proofs were executed and furnished defendant under date of December 29, 1920, and contained among other things in answer to a question as to how the accident occurred the statement, ''George Barry shooting at Linkie Perkins hit me.''

Demand in writing for the indemnity was made under date of January 12th, and under date of January 29, 1921, final demand was made in which was included the amount of indemnity accrued since the first demand.

Under date of January 29th, the appellant wrote the respondent's attorney denying liability under the policy on the ground that the policy provided that there should be no liability thereunder for disability resulting from the intentional act of any person other than the insured and that the proofs submitted showed that the injury was caused by the intentional firing of a revolver, and requesting respondent, if he claimed the facts were not as set forth in the proofs submitted, to inform appellant just what he claimed the facts to be.

The trial resulted in a verdict and judgment against the appellant for $203.05; $90 being for disability indemnity, $4.05 for interest, $9 for damages and $100 for attorney fees.

I. The appellant contends that under the exemption clause of the policy above set out, it is not liable for the injury inflicted upon the insured as shown by the evidence and insists that its demurrer to the evidence should have been sustained.

The question for decision is whether or not the injury so inflicted was ''caused wholly or in part by the intentional act of any person other than the insured,'' within the meaning of the policy.

Appellant's counsel insists that since the revolver

with which Barry inflicted the injury was intentionally discharged, the injury was caused by the intentional act of discharging the revolver and that therefore the insured's injury comes within the exemption clause of the policy as above set out.

The observations of Justice Somerville in Continental Casualty Company v. Cunningham, 188 Ala. l. c. 162, are not inappropriate here:

"What is an 'intentional act' may seem a matter of very simple solution to the intelligent layman, but to the judge who is familiar with the learning of the books, and who ventures into the metaphysical subleties which incumber, judicial definition, the question is full of difficulty."

It may be helpful to consider what constitutes an *act* as it is ordinarily understood. An act does not consist alone of power exerted, but includes the immediate effect of the power exerted. Thus, the driver of an automobile runs down a pedestrian on a highway; the act does not consist merely of the power exerted in running the automobile along the highway, but includes the striking of the pedestrian. One person throws a stone and strikes another person with it; the act does not consist merely of the power exerted in casting the stone, but includes the striking of the other person with it. A locomotive engineer runs a locomotive along the rails and strikes a vehicle at a crossing; the act does not consist merely of the power exerted in running the locomotive, but includes the striking of the vehicle. A person strikes another with his fist; the act does not consist merely of the power exerted in projecting the fist, but includes the impact of the fist as well. An assassin stabs his victim with a dagger; the act does not consist merely of the power exerted in thrusting the dagger, but includes also the striking of the victim with the dagger. So, too, where one person shoots another, the act consists not only in the power exerted in discharging the leaden ball from the revolver, but includes

Cooper v. Nat. Life Ins. Co.

the striking of such other person with the ball so discharged. It is easy to see that the power exerted may be intentional while the immediate effect of the power exerted may be unintentional, but it requires both the power exerted and its immediate effect to constitute the act and though the power exerted may be intentional, yet if the immediate effect thereof is unintentional, then the act is an unintentional act; for if the intended effect of the power exerted miscarries, then there is a complete miscarriage of the act. And this is as the term is ordinarily used and understood amongst plain people. We say, "Smith intentionally shot Jones;" it is at once understood that Smith intentionally struck Jones with a leaden ball which he intentionally discharged from a revolver or other firearm. We say, "Smith unintentionally shot Jones;" it is at once understood that Smith shot Jones by either unintentionally discharging from a firearm a leaden ball which struck Jones, or by intentionally discharging the ball and unintentionally striking Jones with it.

So, in this case when Barry shot the insured, the act of shooting him did not consist merely of the power exerted in discharging the leaden ball from the revolver, but included also the striking of the insured with the leaden ball so discharged. It is undisputed that Barry did not intend that the leaden ball so discharged should strike the insured, and it is clear that the act of shooting the insured was in unintentional act.

It is not permitted to the insurer to separate the act of shooting into its constituents and then say that the one constituent is the result of the other, and thus escape liability under the policy. The insurer cannot be permitted to bring itself within the terms of the exemption clause quoted by such a technical process of reasoning.

The insurer to escape liability under the clause of the policy in question, must show that the act which

18—211 M. A.

caused the injury was wholly intentional, not partially so.

The expression, "injuries caused wholly or in part by an intentional act," does not mean injuries caused by an act wholly or in part intentional.

It must be kept in mind that the policy in suit here is an accident policy insuring against accidental injuries, and that the injury which respondent suffered and for which indemnity is sought, was typically accidental, and when it is attempted to relieve the insurer from liability for such an injury by a clause in the nature of an exception in a policy of this character, it can only be accomplished by language unequivocal in its meaning, and if the language employed is open to construction, the rule of strict construction against the insurer and of liberal construction in favor of the insured is applied with peculiar vigor. [Mathews v. Modern Woodmen, 236 Mo. l. c. 342, 139 S. W. 151.]

The exact language of the exemption clause in question in this case has never been under construction by any of the appellate courts of this State, but language of kindred import has been discussed at length and construed by the Kansas City Court of Appeals in Strother v. Business Men's Accident Association, 193 Mo. App. l. c. 720, 188 S. W. 314, upon which case the appellant here relies for support of its contention.

The clause of the policy in that case provided that, "this policy does not cover any injury, fatal or otherwise, intentionally inflicted by the insured or by any other person." The following excerpts from the opinion fairly well show the circumstances of the killing of McCarty, the insured, for which indemnity was sought, and the ruling of the court thereon:

"McCarty, in the restaurant turned around and was facing Dunford when the latter, having picked up a heavy wooden bar, a two-by-four, six feet long, and, holding it in both hands, drew it back over his head to an angle of forty-five degrees so as to get 'a full swing'

and brought it down with all his force upon McCarty's head. McCarty dropped to the floor without uttering a word. He was unable to speak when one of the women tried to help him, being as she said, 'paralyzed.' He was taken home and died eight days later.

"When Dunford struck him there was no one between the two or close to them and there is no room for any inference that Dunford, when he struck, was intending to do otherwise than to strike McCarty, the individual he did strike, though it is true the two men were strangers to each other. . . .

"Now, unquestionably McCarty's injury was inflicted by Dunford; and there is no room for any inference that the latter did not intend to inflict it. . . . No one was about them. McCarty was the one he intended to strike and the general 'free for all fight' that plaintiff claims took place, occurred after McCarty had been thus intentionally felled. . . .

"The policy does not say the *death* of the insured must have been intended. The exception deals with any *injury* intentionally inflicted whether that injury prove fatal or otherwise. Plaintiff insists that before defendant can claim exemption from liability, it must prove that Dunford intended to kill McCarty. But certainly Dunford intended to *injure* him and the policy says that if the injury was intentionally inflicted then that injury is not covered by the insurance no matter what the result of the injury may be, whether fatal or otherwise. . . .

". . . Dunford had been in the restaurant long enough to see what McCarty had done to Cordell, long enough to pick up the bar and form the intent to strike the individual before him, and he carried that intent into execution by striking the one he intended to strike. The injury McCarty received was, therefore, intentionally inflicted by Dunford and that is all the policy requires to exempt the company."

It is thus seen that the Strother case is clearly dis-

tinguishable from the case before us. In that case the assailant executed the act he intended to execute; he struck the blow he intended to strike and the person he intended to strike; and the death of the insured was the natural, if not inevitable, result of the intentional act thus executed.

In Ryan v. Continental Casualty Company, 94 Nebr. l. c. 38, relied on by appellant, the exact language under review here was considered and construed as follows:

"As already stated, Thompson said, 'I can lick you,' and struck assured in the face, the latter falling backward and fatally fracturing his skull on the pavement. The intention to strike is shown without contradiction. How can it be said that the injury causing the death of assured did not result wholly or in part from the intentional act of Thompson in striking him? Except for the blow in the face he would not have fallen and the injury causing his death would not have occurred."

That case is also clearly distinguishable from the instant case, for in that case Thompson intentionally struck the insured a blow in the face, whereas, in the instant case Barry unintentionally struck the insured in the thigh with a leaden ball discharged from a revolver.

In Continental Casualty Company v. Cunningham, supra, where the same language was under discussion, the court said:

"In its present application, the phrase ought to be given that simple and common sense meaning which the parties to the contract intended it should express. . . .

"If the actor has intelligence enough to understand the physical nature and consequences of his act, and, without the compulsion of an irresistible physical force or of an irresistible insane impulse, consciously directs his action so that the injury of the insured is the natural or probable consequence thereof, then that injury is the result of an intentional act. Of course, the injury

of the person must be intended, as well as the act which causes such injury.—[Orr v. Travelers' Ins. Co., 120 Ala. 647, 652, 24 South. 997.]"

The views we have here expressed find support, we think, in the import of judicial decision in analogous cases. [Hutchcraft's Executor v. Travelers' Insurance Company, 87 Ky. 300, l. c. 305, 8 S. W. 570; Matson v. Travelers' Insurance Company, 93 Me. 469; Newsome v. Travelers' Insurance Company, 143 Ga. 785; General Accident Fire and Life Assurance Corp. v. Hymes, 77 Okla. 20; Travelers Protective Association v. Fawcett, 56 Ind. App. l. c. 120; Railway Officials and Employees Accident Association v. Drummond, 56 Nebr. l. c. 242; Washington v. Union Casualty & Surety Co., 115 Mo. App. 627, 91 S. W. 988; Phelan v. The Travelers' Insurance Company, 38 Mo. App. 640; Strother v. Business Men's Accident Association, 193 Mo. App., supra.]

The Supreme Court of Colorado, however, has reached a conclusion contrary to the views here expressed. In National Life Insurance Company of the United States of America v. Coughlin, 212 Pac. (Colo.) 486, where the language of the policy under review was identical with the language of the policy under review in this case, the insured while on the premises of Elizabeth Haskett was shot and killed by her, who, hearing some one near the premises, went to the back door of her residence and fired a revolver into the darkness to frighten away anyone who might be around; she did not see the insured or anyone else; she did not know that he was near and did not intend to kill him or anyone else, but did intend to fire the revolver and this was the shot that killed the insured; and the court said:

"It will thus be observed that we are called upon to decide the distinction, if any, between 'injuries caused by the *intentional act* of any person' and 'injuries *intentionally inflicted* by the act of any person.' . . .

"In this case death resulted 'wholly or in part' from

the intentional firing of the shot, though the result thereof was not intended and could not have been foreseen, just as in another case it resulted 'wholly or in part' from the intentional striking of a blow, though the result thereof was not intended and could not have been foreseen. [Ryan v. Continental Casualty Co., 94 Nebr. 35, 142 N. W. 288, 48 L. R. A. (N. S.) 524, Ann. Cas. 1914C, 1234.] In that case, the only one in point brought to our attention, the same phrase was under consideration by the court.

"If the language here in question were ambiguous, the judgment might be affirmed under the rule of construction laid down in Preferred Accident Ins. Co. v. Fielding, 35 Colo. 19, 83 Pac. 1013, 9 Ann. Cas. 916, but we find no ambiguity. This was an 'injury caused by an intentional act' of Elizabeth Haskett, but it was not 'intentionally inflicted' by her."

In the Coughlin case two of the Justices did not participate, and Justice Teller dissented and said, among other things, the following:

"The opinion disregards this evident fact that the act, to have any relevancy to the subject-matter of the contract, must include its effect upon the insured. The intention contemplated by the parties must refer to the act as it relates to the insured. Any other construction makes it without apparent purpose. The parties were considering and dealing with the subject of injuries to the insured, and the paragraph in which these words occur contains a list of acts for which the insurer is not liable. It certainly would not be liable for the intentional discharge of a pistol unless injury to the insured resulted from it. It follows necessarily that the result of the shot forms a part of the act against liability for which the insurer was providing."

We think the majority opinion in the Coughlin case is unsound, both upon principle and authority, and we do not follow it.

The instructions given on behalf of the respondent

upon the issue of respondent's right of recovery of the indemnity sued for, were in accord with the views expressed in this opinion and were properly given. The instructions requested by the appellant upon this issue and refused by the court embodied the opposite theory and were properly refused.

II. Appellant contends that the trial court erred in submitting to the jury the question of vexatious refusal to pay the indemnity provided for in the policy. Under the authority of the latest controlling decisions of our Supreme Court this contention must be sustained [State v. Allen, 243 S. W. (Mo.) 842; Berryman v. Southern Surety Co., 285 Mo. l. c. 397, 227 S. W. 96; Non Royalty Shoe Company v. Phoenix Assurance Co., 277 Mo. l. c. 420, 210 S. W. 37.]

In this case a question of law was involved as to appellant's liability under the terms of the policy sued on, which was an open question in this State at the time of the trial, and a question which the appellant clearly had the right to litigate in the courts without being penalized therefor. The precise legal question involved had never been decided, either by the Supreme Court or any one or more of the Courts of Appeals of this State, but has recently been decided adversely to the ruling in this opinion, by the Supreme Court of Colorado in National Life Insurance Company of the United States of America v. Coughlin, supra. To hold that the respondent was entitled to recover damages and attorney's fees for vexatious refusal to pay in this case would be to go in the teeth of the decisions of our Supreme Court above cited.

The Commissioner, therefore, recommends that the judgment of the circuit court be reversed and the cause remanded with directions to enter judgment for plaintiff in the sum of $94.05 as of the date of the original judgment.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judg-

ment of the circuit court is accordingly reversed and the cause remanded with directions to the circuit court to enter judgment for the plaintiff in the sum of $94.05 as of the date of the original judgment. *Allen, P. J., Becker* and *Daues, JJ.,* concur.