Ruby **WORTHINGTON**, Plaintiff,

v.

Clifford **STEVENS**, Defendant,

**State Farm Mutual Automobile Insurance Company**, Garnishee.

No. 1390.

United States District Court
W. D. Missouri,
St. Joseph Division.

Dec. 28, 1967

Downs & Pierce, St. Joseph, Mo., for plaintiff.

Beavers & Zahnd, Maryville, Mo., for defendant.

Wesner & Wesner, Sedalia, Mo., for garnishee.

## MEMORANDUM OPINION, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

DUNCAN, Senior District Judge.

The plaintiff, a resident of the State of Iowa, instituted this suit in this court against the defendant, a resident of the State of Missouri, to recover damages for the wrongful death of her son which resulted from a bullet wound inflicted by the defendant on October 7, 1965 in Worth County, Missouri.

Following the death of the decedent, the defendant was charged with murder in the first degree in Worth County, Missouri, and thereafter, pursuant to negotiations between the prosecuting attorney and counsel for the defendant, the charge was reduced to manslaughter, to which the defendant entered a plea of guilty. He was sentenced to a term of seven years, which was suspended and which

resulted in his being placed on probation for that period.

The manslaughter information charged that:

"Clifford Stevens * * * on the 7th day of October, 1965 did * * * on purpose make an assault upon one Gail L. Worthington with a loaded * * * rifle, and then and there * * willfully and on purpose did discharge and shoot said * * * rifle at and upon the body of said Gail L. Worthington * * *."

Following disposition of the criminal proceedings against the defendant, plaintiff filed suit to recover damages. Immediately upon service of the complaint upon the defendant, he delivered said complaint to the State Farm Mutual Automobile Insurance Company, with whom he had a policy of farm liability insurance and requested said insurer to defend him in the civil litigation. The insurer denied liability and declined to defend the civil suit against the defendant based upon the exclusionary clause of the policy that: "[T]he policy does not apply * * to bodily injury or injury to or destruction of property caused intentionally by or at the direction of the insured".

Thereafter judgment was rendered against the defendant in the sum of $25,-000.00, and when said judgment remained unsatisfied, the plaintiff caused summons of garnishment to be served upon the insurance carrier. The garnishee denied liability for the same reason that it had declined to defend the original action against the defendant, stating that the act of the defendant was intentional and that therefore any liability as to them and based on the policy was abrogated.

The case came on for hearing before the court, a jury having been waived. The only evidence as to what occurred at the time the plaintiff's son came to his death comes from the defendant himself. The defendant lived on a farm several miles north of Grant City in Worth County, Missouri with his wife and several children. The home was located a short distance from the highway and a drive-way led from the highway into that part of the premises where the house was located.

Sometime prior to October 7, 1965, the defendant had placed a large number of watermelons in his front yard for sale, and about 10:30 on that evening, the defendant or some member of his family was aroused by a noise in the yard, and upon investigation the defendant discovered that someone had attempted to take some of the watermelons, but was frightened away when he arrived. He went back to his house and obtained a .22 caliber repeating rifle, returned to the yard and sat in his automobile which was located near the pile of watermelons. A short time later, about 11:00 o'clock, a car came back along the highway and two boys got out of the back seat and another apparently off of the bumper of the car, and came into the driveway where the watermelons were located. He shouted to them to stop and they ran out of the driveway and down the road. He says when the boys were about 200 feet down the road he discharged the rifle several times in rapid succession through the trees at an elevation of 60 to 70 degrees. The car was without lights. It was dark and visibility was limited from 50 to 100 feet.

The defendant and his son got into the son's automobile, drove down the highway in an attempt to apprehend the boys and notify the sheriff. About 500 feet from the defendant's driveway they found the Worthington boy lying on the side of the road with a mark over his eye. They brought him back to defendant's home, called the doctor, the sheriff and the highway patrol. The boy was taken to the hospital but was dead on arrival. One of the defendant's neighbors whose house was 700 feet from the defendant's home, some distance back from but on the same side of the road, testified that the next morning he found two bullet marks in his house, about 10 feet from the ground, and that the night before he heard the bullets hit the house.

It was defendant's testimony that he did not intend to shoot the boy and that

the gun was aimed at an angle so that a bullet could not have hit the boy unless it had been deflected in some manner. This testimony was admitted over the objection of the garnishee. The defendant further testified that following the filing of the murder charge against him, his attorney, the attorney for the state, and the court agreed to the dismissal of the murder charge, the filing of the manslaughter charge and that upon a plea of guilty to such charge, the defendant would be placed on probation. There is no other testimony concerning such an arrangement, except that of the defendant.

There are but two questions for our determination: (1) whether or not the plea of guilty to the information is a judicial admission and conclusive upon the defendant as to the question of intent in the civil suit, or whether such plea is only to be considered as an admission against interest and subject to explanation by the defendant, and (2) if said guilty plea is to be received in evidence only as an admission against interest, has the plaintiff met the burden of showing that the death of the deceased was unintentional?

The only evidence offered by the garnishee was the transcript of the proceedings in the state court containing the defendant's plea of guilty and sentence. Garnishee insists that such plea is a conclusive judicial admission and dispositive of the question of the defendant's intent, citing numerous cases which it contends sustain that position.

The rule in Missouri seems to be that "[e]vidence of a plea of guilty is not conclusive in a civil action, but may be explained by the party concerned." Howard v. Riley, 409 S.W.2d 154, 156 (Mo.1966). To the same effect is Zimmerman v. Southern Surety Co., 241 S.W. 95, 97 (Mo.App.1922). In which the court said:

"The fact that Fiedler entered a plea of guilty to a charge of first degree murder in a prosecution by the state could in no wise be said to be conclusive on plaintiff on the issue involved."

The most recent expression of this rule in Missouri is found in Nichols v. Blake, 418 S.W.2d 188, 190 (Mo.1967) where the court quoted with approval the following rule from Blashfield, Cyclopedia of Automobile Law and Practice, Vol. 9C, § 6196:

" 'Evidence of a plea of guilty to a criminal charge arising out of an automobile accident is generally admissible, but it is not conclusive, and may be explained.' "

The court further said:

"Of course, if the plea of guilty may be explained by the defendant, it is not conclusive whether explained or not, and it has the same status as any other admission against interest. The weight and effect of the proof of the plea of guilty is for the jury."

Garnishee cites Maye v. Pescor, 162 F.2d 641 (8th Cir. 1947); Johnston v. United States, 254 F.2d 239 (8th Cir. 1958); Richardson v. United States, 217 F.2d 696 (8th Cir. 1954); and Morse v. United States, 295 F.2d 30 (8th Cir. 1961), holding that a judicial admission is conclusive on the party making it and that a guilty plea admits all of the facts charged. All of these cases were either habeas corpus proceedings or motions to vacate and set aside sentences under § 2255 Title 28 U.S.C.A., and are not applicable here.

In Stout v. Grain Dealers Mutual Ins. Co., 307 F.2d 521 (4th Cir. 1962) relied upon by garnishee, the facts were somewhat similar to the facts in the case before us. There a peeping tom had been spying on plaintiff's daughter in her home in the night time. Plaintiff set a trap for him by arranging strings and wires in an area which the intruder had been frequenting. Plaintiff lay in wait for him and when he appeared, plaintiff flashed a light upon him. He started to run toward the plaintiff but suddenly veered and ran away, whereupon the plaintiff fired 15 or 16 shots from a rifle in the direction in which the decedent was running. Two of the bullets hit him in the back, killing him.

Plaintiff was charged with murder. At his trial he was permitted to plead guilty to the offense of manslaughter, was fined and placed on probation. Suit was brought against him for the wrongful death of the deceased, and he called upon the defendant with whom he had a comprehensive dwelling insurance policy, to defend the action. The Company refused to defend on the ground that the death was intentionally inflicted. Whereupon the insured instituted a declaratory judgment action against the Company to determine the question of its liability and responsibility to defend the action.

Upon trial of the declaratory judgment action, the District Court found that the decedent's death was intentionally caused, and that the insurer was neither liable to defend the action, nor to pay any damages assessed against the insured in the action brought against him. In affirming the appeal, the court said:

"Thus the plaintiff admitted that the death was intentionally caused and the evidence he presented in that action failed to rebut it."

Thus it may be inferred that the court determined that while the plea of guilty was admissible as an admission against interest, it was not conclusive, and that his evidence failed to overcome the presumption of intent arising from the guilty plea. To this extent then this case is authority for plaintiff's position that defendant's plea of guilty was admissible as an admission against interest and not conclusive as to the intent.

Finally, the garnishee cites Connecticut Fire Insurance Company v. Ferrara, 277 F.2d 388 (8th Cir. 1960), which was tried in this court. Ferrara was charged and convicted of burning his store; he brought suit thereafter against the insurance company to recover the loss. The court held that he was bound by the conviction, but in doing so, recognized the general rule in Missouri as to the effect of a plea of guilty in civil cases.

We think that the facts in the *Ferrara* case are distinguishable from the facts here in that Ferrara brought the suit against the company to recover for the damage to the very property which he had been convicted of destroying, and could not profit by his own wrong.

■ It is therefore our conclusion that the defendant's plea of guilty was admissible in evidence as an admission against interest and subject to explanation, and having so determined, was defendant's explanation sufficient to show his lack of intent and to rebut the evidence of the plea of guilty?

Here we are faced with the task of trying to determine what went on in the mind of the defendant in order to determine exactly what his intent was at the time of the shooting. A most difficult task to say the least. We are not psychologists or psychiatrists and have not their ability to delve into the minds of others so as to predict and understand behavior.

The court understands that in the dealings of men in the everyday affairs of life that there are three things to be considered. The first is that which a man says is what he ought to do, the second is that which a man says is what he does, and the third is that which a man actually does. The court also realizes that the most reliable of the above three factors is the latter, for the reason that men are judged by that which they do, and not by what they say they do or should do.

■■ The law recognizes this basic axiom and has recognized it throughout time. It has been given expression in the form of the following legal presumption:

"  *  *  *  in the absence of evidence to the contrary, a sane man is presumed to intend the natural and probable consequences of his intentional acts." State v. Anderson, 384 S.W.2d 591, 607 (Mo.1964).

This presumption is, of course, utilized in criminal cases in order to determine criminal liability. It is of some value here but only to the extent that it aids us in interpreting the meaning of intentionally caused personal injury under

the policy of insurance. Even so, under the presumption, evidence to the contrary may and can rebut and overcome the presumption. This evidence can come from the lips of the defendant as well as from the circumstances surrounding the event in question. The evidence in the instant case was of such a nature and we are inclined to believe it.

Here we have a man, 46 years of age, who has had no prior difficulty with the law, and who lived on a farm with his wife and several children, including his 17 year old son who was approximately the same age as the deceased. The number of watermelons that the boys could have stolen had they been successful would have been of comparatively little value, and the stealing of them would have been scarcely sufficient to cause a peaceable man to commit murder. It was not shown that the defendant knew any of the boys or had any occasion to entertain any malice toward them. It does not appear from the evidence that they had molested him in any manner on any previous occasion. With all of these factors in mind, we find the defendant's testimony that he only intended to frighten the boys and that he fired between two trees at an angle of 60 to 70 degrees to be true.

We do not mean to condone the offense. Certainly it was an act of gross negligence to fire the rifle in the night time in the general direction that the boys were running, and for that he is to be condemned, but if the intent did not follow the bullet, then the careless act of firing the gun does not convict him of an intent to kill. This thought has found expression in Missouri in the case of Cooper v. National Life Insurance Company, 212 Mo.App. 266, 253 S.W. 465 (1923).

In that case the plaintiff was shot by X who was aiming at Y. Plaintiff was insured against accidental injury and his claim was denied by the defendant who stated that they were not liable under the policy because they believed the injury to have been intentionally caused and therefore not compensable.

The St. Louis Court of Appeals disagreed with the defendant and found that within a clause in an accident insurance policy excepting liability for injuries caused by the intentional act of another, that an act does not consist alone of the power exerted, but includes the immediate effect of such power, so that the act of shooting the insured consisted, not only of the power which propelled the bullet from the weapon, but also the striking of the plaintiff with the bullet, and that the act was not intentional, even if the weapon was intentionally fired, if it was intended thereby to shoot another.

Our sister state, Illinois, was confronted with a similar situation in the case of Smith v. Moran, 61 Ill.App.2d 157, 209 N.E.2d 18 (1965), wherein that court held that an injury caused to a shooting victim who was hit by a bullet which the insured was shooting at the victim's fellow employee was not intentionally caused by the insured within the meaning of the homeowner's policy excluding from coverage injury caused intentionally by or at the direction of the insured, but that the injury was the unintentional result of an intended act.

We believe from the evidence in this case that the shooting of the gun in the air was intentional but that the resultant death of young Worthington was not, but was instead an unintentional result of that intended act and that therefore the plaintiff is entitled to recover of the garnishee.

It is so ordered!