**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a Corporation, Appellant,**

v.

**Ruby WORTHINGTON, Appellee.**

**No. 19194.**

United States Court of Appeals Eighth Circuit.

Dec. 13, 1968.

684

Fred F. Wesner, of Wesner, Wesner & Meyer, Sedalia, Mo., for appellant.

James O. Turner, of Downs & Pierce, St. Joseph, Mo., for appellee; Don Pierce, St. Joseph, Mo., on brief.

Before BLACKMUN, GIBSON and HEANEY, Circuit Judges.

FLOYD R. GIBSON, Circuit Judge.

The crucial issue in this garnishment proceeding is whether a plea of guilty to

a manslaughter charge is a conclusive admission of the commission of an intentional act, not subject to explanation in a subsequent civil proceeding.

Senior Judge Richard M. Duncan of the United States District Court for the Western District of Missouri, in a case tried to the court, a jury having been waived, ruled a plea of guilty is not conclusive and on the evidence adduced entered judgment against the garnishee for $25,000.[1] A timely appeal was filed.

The plaintiff Ruby Worthington in a diversity case filed in the United States District Court for the Western District of Missouri secured a judgment for $25,000 against the defendant Clifford Stevens for negligently and carelessly killing her minor son, Galen Worthington. Garnishment in aid of execution was issued against the State Farm Mutual Automobile Insurance Company, which had issued a personal and farm liability policy[2] to defendant Stevens and other members of his family.

In addition to the issue above stated, which requires an analysis of the applicable cases, the appellant garnishee also raises the issue of the sufficiency of the evidence, which we think patently is without merit under Rule 52(a), Fed.R. Civ.P. The finding of the trial court to the effect that the killing of Galen Worthington was unintentional is not "clearly erroneous", if the judicial admission is not conclusive; and if the judicial admission is conclusive the plaintiff must fail in her garnishment proceeding as the case turns on the admissibility of the defendant's oral testimony regarding the facts surrounding the occurrence and the reason for his plea of guilty.

The tragic facts giving rise to the controversy commenced on October 7, 1965. Defendant Stevens had placed a large number of watermelons in the front yard of his home for the purpose of sale. On

1. A Memorandum Opinion was filed (but not reported) correctly analyzing the applicable cases.

2. The pertinent policy provision excludes coverage of intentionally caused injury.

It reads: "This policy does not apply: * * * to bodily injury * * * caused intentionally by or at the direction of the insured;".

hearing a noise at approximately 10:30 that evening in the direction of his melon pile, he investigated and saw two boys get out of a car and run towards the watermelons. They hesitated on seeing him, and then with alacrity retreated to their car and took off in a northerly direction. Stevens went back into his house, got his .22 caliber rifle, loaded it and went out to wait in his car, which was parked in the front yard. About 11 p. m. a car without lights approached from the north and slowed down at his driveway, allowing three boys to jump off the car and head for the melon pile. Before they reached the melons, Stevens hollered for them to stop. The boys then retreated back to the highway and ran south on the highway following their car which took off without them in a southerly direction.

When the boys were approximately 200 feet down the road, Stevens fired four or five shots at a 60° to 70° angle between two Chinese elms located on his property south of where he was standing. Stevens testified he did not shoot at the boys but rather in a "southwesterly direction and high." Stevens' 17-year old son, Larry, then came out of the house. They got into Larry's car and drove down the road to see where the boys went and to call the sheriff if they could catch up with the boys. About 500 feet south of their home they saw a boy, who turned out to be Galen Worthington, lying on his face along the gravel shoulder of the highway. He had a mark over his eye. Stevens said, "We just figured he had cut a gash across his eye and knocked hisself [sic] out. Knocked the wind out of hisself [sic]." They picked up the Worthington boy, took him back to their house and called a doctor and the authorities. After the authorities responded, Worthington was taken to a hospital but was found to be dead on arrival. Stevens said he did not know of the death until he heard an early morning newscast concerning it.

Stevens testified he did not aim at or intend to shoot the Worthington boy but only intended to fire the shots in the air in a southerly direction along his side of the highway to frighten the boys and that apparently a bullet had deflected or ricocheted from a tree limb. Visibility was poor, 50 to 100 feet.

A neighbor living on the same side of the road approximately 700 feet south of Stevens' place, heard the shots that night, heard the bullets hit his house, and upon examination the next morning found two bullet marks on his house located about 10 feet from the ground. The neighbor's house was set further back from the road than Stevens' house, which fact corroborates Stevens' testimony that he was not firing at the boys.

Stevens subsequently was charged with first degree murder. The charge was later reduced to manslaughter and Stevens pleaded guilty on April 11, 1966 to the manslaughter charge. He said he pleaded guilty because his attorney advised it and that his attorney had negotiated a deal with the prosecutor and apparently with the court for a bench parole of seven years and, "Because I had a family at home, some little children who needed their daddy there and we had a deal worked out." The temper of the community was understandably high because of the tragedy and this fact also influenced his decision to plead guilty. Stevens was sentenced to seven years in the penitentiary but was immediately given a bench parole for a like number of years.

The language of the manslaughter charge is so phrased as to support a first degree murder charge. It reads in part:

"That Clifford Stevens * * * did willfully, unlawfully and feloniously on purpose make an assault upon one Gail L. Worthington with a loaded * * * repeating .22 caliber rifle, and then and there, feloniously, willfully and on purpose did discharge and shoot said * * * rifle at and upon the body of said Gail L. Worthington thereby feloniously inflicting a mortal wound * * *."

Defendant Stevens in pleading guilty told the court that he had talked the mat-

ter over with his attorney and that he was guilty as charged in the information.

The exclusionary clause relied on by the garnishee in defending the garnishment action is unambiguous and clearly states that intentionally caused bodily injury is not covered by the policy. The dispositive question is whether Stevens intentionally killed the Worthington boy. He is charged with a willful killing in the manslaughter information, but his testimony as to the actual facts would certainly be relevant evidence upon which the trier of facts could find that the fatal wounding of the Worthington boy was unintentional. Garnishee questions the competency of Stevens' testimony, asserting that Stevens is bound by his judicial admission that he willfully and intentionally wounded Worthington and that he and the plaintiff are severally and jointly precluded and collaterally estopped to deny that the killing of Worthington was directly due to the intentional acts and conduct of Stevens.

■ Garnishee correctly points out that in a garnishment proceeding the injured party in an action against the insurer stands in the shoes of the insured and "his rights are no greater and no less than the insured's would have been in an action between the insured and the insurer * * *." Meyers v. Smith, Western Casualty and Surety Company, garnishee, 375 S.W.2d 9, 14, 15 (Mo. 1964). But, this principle does not resolve the factual issue of whether the killing was intentional or the legal issue of the effect of the judicial admission in the criminal case.

■■ Garnishee in part relies on a line of cases holding that judicial admissions are conclusive upon their maker. Johnston v. United States, 254 F.2d 239 (8 Cir. 1958); Maye v. Pescor, 162 F.2d 641 (8 Cir. 1947) and Wiget v. Becker, 84 F.2d 706 (8 Cir. 1936). These and similar cases hold that judicial admissions are binding for the purpose of the case in which the admissions are made including appeals. This does not make the same judicial admissions conclusive

and binding in separate and subsequent cases. The purpose of a judicial admission is that it acts as a substitute for evidence in that it does away with the need for evidence in regard to the subject matter of the judicial admission. IX Wigmore, Evidence § 2588 (3rd ed. 1940). Wigmore notes that "Judicial admissions are conclusive in their nature but that effect is confined to the cause in which they are made. When used in other cases as ordinary admissions, they are, of course, * * * not conclusive." IV Wigmore, Evidence § 1066 (3rd ed. 1940).

■■ The preponderance of the evidence in this case indicates that while the discharge of the firearm was intentional the fatal wounding of Worthington was not intentional but accidental. The only contrary evidence is Stevens' plea of guilty to the manslaughter information, which charged an intentional killing. Read literally, the charge sets forth a willful and intentional act. However, informations, charges and complaints often use, or are thought by many laymen to use, formalistic and legalistic types of verbiage that confuse and daunt a person not versed in the law. This practice was widespread at common law, see IV Wigmore, Evidence § 1064 (3rd ed. 1940), and still proves troublesome to laymen at the present time. Regardless of the more understandable and simplified type of pleadings now used there appears to be no sound reason why a defendant in a criminal case should not be allowed to explain his plea of guilty and to testify as to his version of the incident in a subsequent civil proceeding. His credibility is still a matter for determination by the trier of facts.

■ The exception to the rule that judicial admissions in criminal cases are not conclusive in subsequent civil proceedings occurs where a party seeks to profit from his own criminal act. The courts in such cases deny recovery as a matter of public policy. Connecticut Fire Insurance Company v. Ferrara, 277 F.2d 388 (8 Cir. 1960); In re Laspy, 409 S.W.2d 725 (K.C.Mo.Ct.App.1966).

The insured, Stevens, is not profiting from his own crime in this case. Obviously the crime was not committed to create liability. The most that can be said on the profit issue is that Stevens is attempting to shift his liability for the judgment against him for wrongful death to his insurance carrier, but this is a liability that properly belongs to the carrier if the killing was in fact accidental. The factual issue still remains and is to be resolved upon all the evidence adduced that is germane to the fatal occurrence, including the wrongdoer's testimony, the physical facts and the admissions made in the criminal case.

Garnishee also relies on Farm Bureau Mut. Automobile Ins. Co. v. Hammer, 177 F.2d 793 (4 Cir. 1949) holding there was no coverage in a similar liability policy for an intentional assault by a vehicle. But that case merely stands for the proposition that an intentionally inflicted injury is outside the coverage of a policy containing an exclusionary clause of the type under consideration in the case at bar. With this we agree. We think under the plain provisions of the policy if Stevens actually intended to shoot the Worthington boy the coverage of the policy would not extend to that type of situation. A similar issue was presented in Stout v. Grain Dealers Mutual Insurance Company, 307 F.2d 521 (4 Cir. 1962) where an intentional killing of a "peeping tom" placed the insured outside the coverage of a comprehensive liability policy excluding intentionally caused death. The insured in Stout, as here, pleaded guilty to a manslaughter charge and attempted to rebut his admission of an intentional act. The court did allow the insured to explain his criminal plea but held that the evidence he presented failed to rebut his criminal admission that the death was intentionally caused. The factual record in Stout strongly indicates an intentional shooting at and intended wounding of the victim. The insured shot directly at his victim some 14 or 15 times. Thus on the basis of the whole record, the court properly concluded the fatal injury was intentionally inflicted.

■ The trial court correctly decided the issue of the legal effect to be attributed to Stevens' plea of guilty in the criminal case. The plea is admissible as an admission against interest but it is not conclusive and defendant may offer his explanation of the plea and his version of the occurrence that occasioned the criminal charge. Zimmerman v. Southern Surety Company, a Missouri appeals case in 241 S.W. 95 (1922), held that a plea of guilty to a first degree murder charge was not conclusive on the plaintiff beneficiary in an accident insurance policy which precluded recovery for injuries caused by the intentional acts of others. The court held that while the discharge of the firearm was intentional, whether the killing of the insured was intentional or unintentional presented a fact issue and sustained a finding of accidental rather than intentional killing.

The Missouri Supreme Court in Howard v. Riley, 409 S.W.2d 154 (1966) held evidence of a plea of guilty to a criminal charge of careless driving is admissible in a subsequent civil case as an admission against interest but is not conclusive in such civil action and at page 156 cites with approval Blashfield's Cyclopedia of Automobile Law and Practice, Vol. 9(c) § 6196, p. 306: "Evidence of a plea of guilty to a criminal charge arising out of an automobile accident is generally admissible, but is not conclusive, and may be explained." See also 18 A.L.R.2d 1311 (1951) reading, "Evidence of a plea of guilty is not conclusive in a civil action, but may be explained by the party concerned." The clear trend of authorities is that evidence of a guilty plea is admissible against a party in a subsequent civil proceeding but that it may be explained and is not conclusive, the weight of the evidence being for the trier of the facts. See, Id. pp. 1311–1312.

The Missouri Supreme Court again in Nichols v. Blake, 418 S.W.2d 188 (1967)

followed *Howard* and held a plea of guilty in a criminal case was not conclusive in a subsequent civil proceeding arising out of the same occurrence, the criminal plea having the same status as any other admission against interest and being subject to explanation by the defendant. This again was an automobile accident case but we can perceive of no reason why the same principle would not and should not be applicable to any civil case arising out of the commission of a wrong, subject to the exception that a criminal would not be allowed to profit by his own crime.

Garnishee further suggests that, even if Stevens' judicial admission is not conclusive upon him, he is nevertheless not covered by the policy since the injury was the result of an intentional act and intentionally caused injuries are excluded by the policy exclusion. We do not think the exclusionary clause is entitled to such a broad interpretation. Almost all acts are intentional in one sense or another but many unintended results flow from intentional acts. A car is driven intentionally but most cars do not intentionally become involved in accidents. The Illinois Appellate Court in Smith v. Moran, 61 Ill.App.2d 157, 209 N.E.2d 18 (1965) considered the effect of an identical exclusionary clause on intentionally caused injury and decided that the insured was covered under the liability policy for the unintentional results of his intended act. The insured in *Smith*, while shooting at an intended victim, shot the plaintiff who was a bystander to the assault. The Court viewed the shooting as an intentional act but the injury to the plaintiff as the unintentional result of an intended act directed at a third person. An earlier Missouri Appeals case, Cooper v. National Life Insurance Company, 212 Mo.App. 266, 253 S.W. 465 (1923) discussed a similar distinction in an accident policy case between intended acts and unintended results, holding the shooting of a bystander in a quarrel between two other persons was not an intentional act.

Garnishee also raises the related issue that the plaintiff Worthington stands in the shoes of the insured Stevens and that both are collaterally estopped to deny the killing was intentional because of Stevens' criminal plea. The only authorities cited for this contention are the cases holding that a criminal cannot profit from his own criminal act, which cases are not applicable to the factual situation at bar. There is no basis at all for applying an estoppel since the garnishee has not shown by any evidence that it was prejudiced and relied upon the defendant's admission of guilt in the criminal case. With the assured asserting a contrary version of the facts, the insurance company (garnishee) had no right to rely solely on the plea of guilty as being determinative.

The District Court made a correct interpretation of the applicable law and its factual finding is fully supported by the evidence and thus is not subject to being upset as clearly erroneous.

Judgment affirmed.