James CURTAIN, Plaintiff,

v.

Charles H. ALDRICH, Defendant,

and

Vanguard Insurance Company, Garnishee.

VANGUARD INSURANCE COMPANY, Appellant,

v.

James CURTAIN et al., Respondents.

No. KCD 30160.

Missouri Court of Appeals, Western District.

Oct. 1, 1979.

Motion for Rehearing and/or Transfer Denied Oct. 29, 1979.

Application to Transfer Denied Dec. 6, 1979.

Danny L. Curtis, Niewald, Risjord & Waldeck, Kansas City, for garnishee.

Robert L. Shirkey, Kansas City, for respondent James Curtain.

Before DIXON, P. J., and TURNAGE and KENNEDY, JJ.

TURNAGE, Judge.

James Curtain obtained judgment in the amount of $8,500 against Charles Aldrich for personal injuries and instituted a garnishment action against Vanguard Insurance Company to recover such amount. Vanguard filed a declaratory judgment suit against both Aldrich and Curtain to obtain a declaration of its rights under its policy issued to Aldrich with reference to the coverage for the incident here involved. The trial court consolidated the actions and heard the evidence on both before a jury. At the conclusion of the evidence the court directed a verdict in favor of Curtain against Vanguard on the garnishment action and declared Vanguard's rights under its policy to be consistent with its judgment which in effect declared Vanguard was obligated to pay the judgment against Aldrich.

Vanguard appeals and contends the court erred in directing a verdict against it in the garnishment action and alternatively contends that even if its policy affords coverage to Aldrich there was a factual issue to be determined by the jury. Reversed and remanded.

The underlying incident occurred in November, 1973. At that time Aldrich and his wife were separated with Aldrich remaining in the family home. An agreement had been reached for the wife to remove certain items from the family home but apparently Aldrich did not know exactly when or how these items were to be removed. One evening when Aldrich returned home he was working in his garage, which was under the

living portion of the house, when he heard footsteps upstairs. According to his testimony, he thought there was an intruder in the house, grabbed a crowbar and ran out of the garage and around to the front. He stated it was about 9:00 P.M. and dark and he could only see a man with something in his arms. Aldrich stated he thought it was a burglar and ran up to the man and struck him with the crowbar. The man began to run and Aldrich struck him again, knocking him to the ground. At this time the figure on the ground called out, "Charlie, this is Jim" and Aldrich stated that for the first time he realized the man he had struck was James Curtain.

Curtain and Aldrich had married sisters. Curtain and Don Martin, who had married another of the sisters, had attached a U-Haul trailer to Martin's pickup truck to assist Mrs. Aldrich in moving some of her belongings. On the night in question, Curtain testified he, Martin and Mrs. Aldrich had made one trip to the Aldrich home and had removed some of the belongings and at the time in question had returned to make a second trip. Curtain stated it was dark but there was at least a dim light on the Aldrich front porch. Curtain stated the trailer attached to the pickup was backed up to the porch which was a few steps above ground level. He stated he was arranging some blankets in the trailer to protect the sides and was walking toward the house with the blankets under his arm when he was suddenly attacked by Aldrich. Curtain stated he was knocked down by the first blow and started crawling when he was struck by a second blow which rendered him unconscious for about a minute. When he regained consciousness, he called out to Aldrich to identify himself.

There was evidence that Curtain and Aldrich were on good terms without any history of bad feeling between them. Aldrich testified the incident was an accident because he struck Curtain only because he thought he was a burglar and if he had known it was Curtain he would never have struck him. There was also evidence that Aldrich, of course, was well acquainted with Martin and Martin's pickup truck since Martin was married to the sister of Aldrich's wife. There were discrepancies between the versions related by Curtain and Aldrich. Curtain told a police officer who investigated the incident that Aldrich had the crowbar taped to his right wrist, yet Aldrich denied this. There was also a dispute as to the amount of light in the vicinity emanating from a street light and the porch light. In addition, Vanguard introduced evidence of the first petition Curtain filed against Aldrich in which it was alleged Aldrich intentionally assaulted Curtain. Aldrich admitted that he pleaded guilty to a charge of assault as a result of this incident.

Vanguard issued a homeowners policy to Aldrich and Vanguard urges the exclusion that the policy does not apply "to bodily injury or property damage which is either expected or intended from the standpoint of the insured" relieves it from liability to pay the judgment in favor of Curtain.

Vanguard's position at the trial and here is that Aldrich intended to strike the person he saw and intended to inflict some injury on that person, and, for that reason, the injury was intentional from the standpoint of Aldrich and the exclusion applies. The directed verdict by the trial court undoubtedly resulted from the opposite views held by Curtain and Aldrich as to whether the admitted fact that Aldrich intended to strike the person he actually struck was sufficient to invoke the exclusion, even if Aldrich's version was accepted that he only struck Curtain because he mistook him for a burglar and if he had known it was Curtain he would never have struck him. The trial court was led to believe that a resolution of this question would resolve both lawsuits and based on *Cooper v. National Life Ins. Co.*, 212 Mo.App. 266, 253 S.W. 465 (1923) decided the question in Curtain's favor by ruling that the unintended result of injury to Curtain which followed the intended striking did not invoke the exclusion.

*Cooper* did not involve a case of mistaken identity but did declare the distinction between an intended act and an unintended result.

The exclusionary clause relied on by Vanguard is the same exclusion as that considered in *Hanover Insurance Company v. Newcomer,* 585 S.W.2d 285 (Mo.App.1979). In that case this court adopted the reasoning contained in *Continental Western Ins. Co. v. Toal,* 309 Minn. 169, 244 N.W.2d 121 (1976). In *Toal* the court stated an exception clause identical to the one here was to be interpreted the same as the exception rather commonly used in insurance policies of " 'bodily injury * * * caused intentionally by or at the direction of the insured.' " 244 N.W.2d 124, n. 1. The same exclusionary clause as that in this case was considered in *Lyons v. Hartford Insurance Group,* 125 N.J.Super. 239, 310 A.2d 485, 488[2] (1973). There the court stated the New Jersey public policy denied insurance indemnity for the insured's intentional acts and stated the exclusionary clause involved there and here probably had no more effect than the law would imply in its absence. The public policy of Missouri with respect to insurance coverage for intentional acts is the same. *Crull v. Gleb,* 382 S.W.2d 17 (Mo.App.1964). In light of *Toal* and *Lyons* this court construes the exclusionary provision in this case to exclude intentional acts on the part of the insured. The question then becomes whether an intentional assault committed because of mistaken identity comes within the exclusion for intentional acts.

Cases applying exclusionary clauses for intentional acts involving a mistake of identity uniformly draw a distinction between the intentional act induced by the mistaken identity and the unintended results which flow therefrom.

The earliest case to consider an intentional act induced by mistaken identity is *Utter v. Travelers' Ins. Co.,* 65 Mich. 545, 32 N.W. 812 (1887). In that case Utter was an army deserter who was being sought by police officers in Los Angeles. The officers located Utter in a house and when Utter opened a door one of the officers fired and killed him. It developed, however, the officer thought he was firing at someone else and thereafter entered the house and demanded to know which person was Utter. The opinion states at 32 N.W. 815:

It seems to me that the design intended by the terms of this policy must be the design that intended the actual result accomplished, and not in the design of the act itself, which act resulted in the killing of one contrary to the design of the act. If, when Berry [the officer] fired this shot, he did not know the man he fired at was Utter, and did not intend to kill Utter, it cannot be said that Utter lost his life by the design of Berry.

The exclusion in that policy was that the death not be the result of design, either on the part of the deceased or any other person. The court obviously considered design to be synonymous with intent.

In *Newsome v. Travelers' Ins. Co.,* 143 Ga. 785, 85 S.E. 1035 (1915) the policy excepted injuries " 'intentionally inflicted upon the insured by any other person, . . ..' " The court held "such exception will not relieve the insurer from liability for an injury to the insured inflicted by another person, where the other person, intending to injure someone other than the insured, mistook the insured for the person intended to be injured and intentionally inflicted upon him a bodily injury . . .." The court cited *Utter* in support of its holding.

In *Mah See v. North American Acc. Ins. Co.,* 190 Cal. 421, 213 P. 42 (1923) the policy excluded injury intentionally inflicted on the insured. There was some question whether the insured was the intended victim or whether he was killed as a result of mistaken identity. The court relied on *Utter* and held if the insured were killed when the assassin intended to kill someone else, the policy exception did not apply. In an annotation following *Mah See* in 26 A.L.R. 129 (1923) it is stated that "the provisions of accident policies excepting or limiting liability in case of injuries intentionally inflicted upon the insured, are generally held inapplicable where the insured is injured or killed by one who mistakes him for another person."

In *Brooks v. Continental Casualty Company,* 13 La.App. 502, 128 So. 183 (1930) the

policy excepted injury resulting from the intentional act of the insured or any other person. The court stated at page 185[2, 3]:

> In the construction of a proviso of that character those courts have about uniformly held that the company is not exempted from liability where the party shooting intended to shoot someone else, and by mistake shot the party injured or killed. Here it is unquestionably shown that Legendre intended to shoot holdup men, and by mistake shot the unfortunate Moses Brooks.

The court also discussed the distinction between intentional acts and unintentional results.

In *Cooper, supra,* the policy excepted injuries caused by the intentional act of any person other than the insured. In that case an altercation broke out in a soft drink parlor between a man and woman. When the man flourished a gun the woman jumped behind the insured, who had no part in the argument, and when the man started firing, the insured was struck. The court discussed the distinction between the intentional act in the man firing the gun but the unintentional result of the insured being struck.

In *Wildblood v. Continental Casualty Co.,* 182 La. 202, 161 So. 584 (1935) the exception in the policy was for intentional acts of the insured or any other person. The court considered *Brooks* and *Mah See* and concluded the unintentional result following the intentional shooting of a person which follows a mistaken identity prevents the exclusionary clause from operating. However, the court held whether or not the intentional act is the result of a mistaken identity is a question of fact.

Vanguard relies principally upon *Subscribers At Auto Club, etc. v. Kennison,* 549 S.W.2d 587 (Mo.App.1977) in which the policy excepted intentional acts on the part of the insured. The court in that case considered injuries resulting when the insured intentionally drove his car into another car. The court did not discuss the rationale of cases involving mistaken identity and that case has no application to the case at bar.

This court concludes after a careful review of all the cases involving injuries inflicted as a result of mistaken identity that a distinction must be made between intentional acts which lead to injury or death and the unintended results of such acts when the act itself is the product of a mistake of identity. This is simply an extension of the rule already adopted in *Cooper* that there may be unintended results from intentional acts. Thus, in this case Vanguard's position is not well taken that since Aldrich intentionally struck Curtain the exclusionary clause applies without further examination. For that reason the court correctly overruled Vanguard's motion for a directed verdict.

However, as held in *Wildblood,* the question of whether or not the injury to Curtain was inflicted as the result of a mistaken identity is one of fact. Here there was evidence from which the jury could have found the attack on Curtain was, in fact, intentional and not induced by a mistaken belief as to Curtain's identity. There was evidence that Curtain's first petition alleged the assault on him by Aldrich was unlawful and maliciously done with intent to injure Curtain in a cruel and inhuman manner. This pleaded an intentional tort in plain language and the word "maliciously" also alleges an intentional tort. *Voss v. American Mutual Liability Insurance Co.,* 341 S.W.2d 270, 279[11–13] (Mo. App.1960). Although this pleading was supplanted by an amended petition which omitted any reference to intentional acts on the part of Aldrich, the abandoned pleading is admissible as an admission against interest. *DeArmon v. City of St. Louis,* 525 S.W.2d 795, 803[24–28] (Mo.App.1975). Further, the evidence that Aldrich pleaded guilty to a charge of assault as result of this incident was admitted without objection. A plea of guilty to a criminal charge is admissible for consideration by a jury, but, of course, is not conclusive. *Ferguson v. Boyd,* 448 S.W.2d 901, 903[3, 4] (Mo.1970).

There was also a dispute of whether there was enough light for Aldrich to have been able to identify Curtain or Martin's pickup

or both. In addition, Curtain's statement that Aldrich had the crowbar taped to his wrist would be evidence from which the jury could infer an intention to attack Curtain rather than the attack resulting from a spontaneous reaction to the thought of an intruder in the house.

All of the foregoing evidence was sufficient to make an issue of fact as to whether the assault upon Curtain was induced by a mistaken identity or was intentionally directed at Curtain from the very beginning. In this posture the trial court should not have directed a verdict in favor of Curtain and against Vanguard in the garnishment action, but should have let the jury determine the factual dispute of whether Aldrich did intentionally assault Curtain or whether the assault, even though intentional, was induced solely by reason of the mistaken belief on the part of Aldrich that Curtain was a burglar.

Likewise, the trial court should not have directed a verdict in favor of Curtain and Aldrich in the declaratory judgment suit brought by Vanguard. The court should have declared that the exclusionary clause did apply if Aldrich intentionally assaulted Curtain knowing who he was, but did not apply if Aldrich assaulted Curtain under the mistaken belief that Curtain was a burglar and except for this mistaken belief Aldrich would not have committed the assault.

The judgment is reversed on the garnishment suit and the cause is remanded for a new trial. The court is directed to enter judgment in the declaratory judgment suit declaring that the exclusionary clause applies if the trier of fact concludes Aldrich assaulted Curtain with the intent to injure Curtain, but does not apply if Aldrich assaulted Curtain under the mistaken belief that he was a burglar and did not, in fact, intend to injure Curtain.

All concur.